UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>(4) GAMAL ABDELAZIZ<br><br>Defendant. | )<br>)<br>)  Criminal No. 19-10080-NMG-4<br>)<br>)<br>)<br>)<br>)<br>) |

GOVERNMENT'S PROPOSED *FOSTER* HEARING
QUESTIONS FOR DEFENDANT GAMAL ABDELAZIZ

The government hereby submits the following proposed questions in response to the Court's Order, Docket No. 457:

**QUESTIONS RELATED TO THE CHARGES**

- Do you understand that the Government alleges that you and others have been involved in a conspiracy to defraud, amongst others, the University of Southern California ("USC")? Specifically, the Government alleges that you defrauded USC by conspiring to use bribery and other forms of fraud to have your daughter admitted to the university as a purported basketball recruit.

- Do you understand that USC is both the victim of your alleged scheme and is a likely prosecution witness who will provide evidence implicating you in the charged scheme? For example, USC representatives are likely to testify concerning the scope and nature of the conspiracy (*e.g.*, employees breached their fiduciary duties to USC by accepting bribe payments from defendants, directly and indirectly, in exchange for facilitating the admission of a prospective student) and provide direct evidence of your guilt (*e.g.*, the misrepresentations concerning your daughter's athletic abilities were material to their admission to USC).

- Do you understand that issues pertaining to USC will permeate the entire proceeding against you regardless of whether you advance such issues or not? By way of example, below is a non-exhaustive list of issues that defense counsel without conflicts of interest are highly likely to advance on behalf of their clients:

    o Disputing that USC coaches and athletic administrators owed the university a fiduciary duty;

    o Suggesting that USC was aware of or sanctioned its employees' actions;

    o Arguing that USC admissions and athletic recruitment policies and procedures otherwise condoned the alleged misconduct;

2

- o Denying that USC employees breached any duties to USC by accepting payments directly to themselves or indirectly to university accounts over which they exercised discretion; and

- o Challenging the alleged misrepresentations by the defendants and their co-conspirators.

- Do you also understand that you and John Vandemoer are alleged to be members of the same criminal conspiracy? Specifically, you and Mr. Vandemoer are alleged to have agreed with William "Rick" Singer, as well as other parents of college applicants and other members and associates of Singer's enterprise, to use bribery and other forms of fraud to facilitate the admission of children to elite colleges and universities.

- Do you further understand that Mr. Vandemoer has plead guilty for his role in the criminal conspiracy in which you have been charged?

- Do you understand that the question of whether this case involves multiple conspiracies or a single conspiracy is a question of fact for the jury that cannot be resolved pre-trial? *See, e.g., United States v. Wihbey*, 75 F.3d 761, 774 (1st Cir. 1996) ("the question whether a given body of evidence is indicative of a single conspiracy, multiple conspiracies, or no conspiracy at all is ordinarily a matter of fact" for the jury).

- Do you understand that the government may use the statements of co-conspirators, like Mr. Vandemoer, against you at trial even if you had no personal knowledge of or acquaintance with her before this case? *See, e.g., United States v. Negron-Sostre*, 790 F.3d 295 (1st Cir. 2015) ("Each coconspirator need not know of or have contact with all other members, nor must they know all of the details of the conspiracy or participate in every act in furtherance of it.").

## QUESTIONS RELATED TO SCOPE OF REPRESENTATION

- Do you understand that Nixon Peabody LLP ("Nixon Peabody") represents you, an alleged co-conspirator of yours who has plead guilty (*i.e.*, Mr. Vandemoer), as well as a party you are charged with defrauding (*i.e.*, USC)?

- Do you understand that you are entitled to be represented by attorneys who have ethical duties of undivided loyalty to you (and you alone) as well as to protect your confidences? *See* MASS. R. PROF'L C. 1.7 ("[A] lawyer shall not represent a client" where "(1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one of more clients will be materially limited by the lawyer's responsibilities to another client . . . ."); *see also Altova GmbH v. Syncor Soft SRL*, 320 F. Supp. 3d 314, 319 (D. Mass 2018) ("Rule 1.7 serves as a prophylactic measure to protect confidences that a client may have shared with his or her attorney . . . [and] safeguard[s] loyalty as a feature of the lawyer-client relationship.") (citations omitted).

- Do you further understand that Nixon Peabody owes these same ethical obligations—

3

such as duties of undivided loyalty and confidentiality—to USC and to Mr. Vandemoer?

- Do you understand in what capacity Nixon Peabody has represented USC in the past as well as under what circumstances it currently represents USC? If so, please explain your understanding.

- Do you understand that Nixon Peabody's concurrent representation of you and USC may result in an actual conflict of interest regardless of the fact that the law firm represents you and USC in different matters?

- Do you understand that even though different attorneys from Nixon Peabody may be representing you and USC that the conflicts of interests of one attorney in a law firm are imputed to all other attorneys in that firm? MASS. R. PROF'L C. 1.10(a).

- Do you understand that Nixon Peabody has an actual pecuniary interest from its representation of USC that pre-dates your relationship with the law firm, as well as from its representation of Mr. Vandemoer?

- What do you understand to be the specific measures that Nixon Peabody has established within the firm to prevent the sharing of information between employees representing you and employees representing either USC or Mr. Vandemoer?

- What do you understand to be the specific measures that Nixon Peabody has established within the firm to prevent the law firm from breaching its duty of loyalty to you, USC, and/or Mr. Vandemoer during the firm's representation of you in this matter?

- Do understand that Nixon Peabody, due to its concurrent representation of USC, will be, at best, materially limited in and, at worst, prohibited entirely from advancing defenses on your behalf? For example, Nixon Peabody will unlikely be able to participate in advancing or developing any defenses that pertain to USC, including the non-exhaustive list of USC-related issues set forth above that the Government anticipates will permeate the proceedings against you.

- Do you understand that courts have held that concurrent representation of a defendant and a potential witness can result in disqualification of the attorney from continued representation? *See, e.g., United States v. Arias*, 351 F. Supp. 3d 198, 201 (D. Mass. 2019) ("The defendant's waiver alone does not cure this conflict because Massachusetts Rules of Professional Conduct require both affected clients to agree to waive the conflict and the CW has refused to do so.").

- What do you understand to be the role that "conflict counsel"— Campbell & Williams— will have due to the conflicts of interest that arise from Nixon Peabody's concurrent representation of you and USC?

- Do you understand that the use of "conflict counsel"—in other words, counsel with no potential for conflicts of interest—may be insufficient to prevent disqualification of Nixon Peabody, because issues pertaining to a current client, USC, will permeate the

proceedings?  *See, e.g., United States v. Bikundi*, 80 F. Supp. 3d 9, 21 (D.D.C. 2015) (rejecting conflict counsel arrangement where the conflict 'extend[ed] beyond just the cross-examination of [co-defendant] and infect[ed] every aspect of trial presentation.").

**QUESTIONS RELATED TO WAIVER**

- Do you understand that, while certain conflicts of interest may be waivable, ethical obligations imposed on lawyers require that "each affected client" must give "informed consent, confirmed in writing" for a conflict of interests between two clients to be waived?  *See* MASS R. PROF'L C. 1.7(b)(4).

- Do you understand that Nixon Peabody is prohibited from representing you if that representation is "directly adverse" to another client (*e.g.*, USC), or if there is a "significant risk" that the representation "will be materially limited" by the law firm's responsibilities to another client absent a written waiver from all of the firm's conflicted clients?  *See* MASS R. PROF'L C. 1.7 cmt. 6 ("[A]bsent consent, a lawyer ordinarily may not act as an advocate in one matter against a person the lawyer represents in some other matter."); *see also Altova GmbH*, 320 F. Supp. 3d at 319 (noting that Rule 1.7 requires "every affected client" to provide "written informed consent").

- Do you understand that USC's engagement letter with Nixon Peabody does not explicitly waive conflicts of interests pertaining to the law firm's representation of defendants, like yourself, who stand accused of criminally defrauding the university?

- Do you understand that, after learning about Nixon Peabody' representation of you in this criminal matter, USC has not provided a written waiver to allow Nixon Peabody to continue to represent you and USC?

- Do you understand that your waiver of Nixon Peabody's conflict of interests alone is insufficient to allow for Nixon Peabody to continue to represent you in this matter?

- Do you understand that courts have held that concurrent representation of a defendant (who has waived conflicts of interest) and a potential witness (who has not waived conflicts of interest) can result in disqualification of the attorney from continued representation of the defendant?  *See, e.g., Arias*, 351 F. Supp. 3d at 201 (disqualifying an attorney, despite the waiver of conflicts from a defendant, due to an actual conflict of interest arising from concurrent representation of a likely witness against the defendant).

**QUESTIONS RELATED TO RISKS OF NIXON PEABODY'S CONTINUED REPRESENTATION**

- Do you understand that, should the court deem the conflicts here to be waivable and further conclude all clients have so waived those conflicts, no one can predict exactly how the conflicts of interest created by Nixon Peabody's concurrent representation of USC may hinder your defense?

- Do you understand that Nixon Peabody's concurrent representation of USC will actually limit your attorneys' ability to defend you even before trial?  By way of example:

- o Nixon Peabody will be prohibited from fully investigating, producing, and developing evidence that may be favorable to you since doing so would be directly adverse to USC. *See, e.g.*, NYCBA Formal Op. 2017-6 at 3-4 (2001) ("A lawyer's taking discovery, whether testimony or documentary, on behalf of one client, of a third party who is also a client, will present . . . direct adverseness, so as to be disqualifying under Rule 1.7(a)."). For example, Nixon Peabody will be unable to assist your defense in developing any factual discovery concerning USC athletics, admissions, or development policies and practices even if that evidence could establish that your alleged bribes and fraudulent misrepresentations were immaterial to USC.

- o Nixon Peabody will be prohibited from advancing arguments at any phase of the proceedings that breach its duties of undivided loyalty and confidence to USC. For example, Nixon Peabody may be unable to advance or develop any legal arguments that USC was anything other than a victim of your alleged scheme to defraud. *See, e.g., United States v. Zarrab*, No. 15-cr-867 (RMB), 2017 WL 946334 (S.D.N.Y. Feb. 15, 2017) (discussing that, even though disqualification of the attorney was not warranted under the circumstances, conflict of interests prohibited the conflicted attorneys from "developing or advancing any argument that the [victim clients] were anything but 'victims' of [the defendant-client's] alleged illegal transactions.").

- Do you understand that Nixon Peabody's concurrent representation of USC will limit your counsel's ability to defend you at trial? For example, no Nixon Peabody attorney will be allowed to cross-examine any USC representative who may be called to testify at your trial. *See, e.g.*, ABA Formal Op. 92-367 at 1 (Oct. 16, 1992) (the ABA has concluded that "[a] lawyer's duty of loyalty demands that a client not be concerned with whether the lawyer may subconsciously be influenced by the differing interests of another," but that "[w]hen a lawyer is called upon to cross-examine her own client, the law may well be torn between a 'soft,' or deferential, cross-examination, which compromises the representation of the litigation client, and a vigorous one, which breaches the duty of loyalty to the client-witness.").

- Do you understand that Nixon Peabody's concurrent representation could limit your ability to present arguments and evidence at sentencing? For example, in the event you are convicted, USC's right to restitution will prohibit Nixon Peabody from advising you at that phase in the proceeding.

- Do you understand that Nixon Peabody's representation of Mr. Vandemoer may significantly hamper you defense? For example, in the event that you proceed to trial, the Government may call Mr. Vandemoer to testify about the nature and scope of the criminal conspiracy in which you are charged. Nixon Peabody, however, would be unable to develop or advance any arguments that, while beneficial to you, breach the firm's ongoing ethical obligations to Mr. Vandemoer.

- Do you understand that even if Nixon Peabody were to cease concurrent representation

6

at some point in these proceedings their ongoing ethical obligations—including duties of undivided loyalty and confidentiality—to their former client could still hamper your defense? For example, information shared by their former client (*i.e.*, USC) during their representation, even if it could exculpate you of the charges, would not be able to be used in your defense. Moreover, Nixon Peabody's duty of loyalty to their former clients may continue to impact the development or advancement of defenses that, while beneficial to you, shift blame on to USC.

- Do you understand that if your attorneys withdraw from representing you on the eve of trial, such withdrawal may hamper your defense at trial? In addition, do you understand that such a late withdrawal may not be grounds for delaying the trial?

- Do you understand that if you are convicted of the charges you are unlikely to be successful in any appeal that is based on the issue of the conflict of interests presented by the concurrent representation by Nixon Peabody of you, USC, and Mr. Vandemoer?

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: */s/ Justin D. O'Connell*
ERIC S. ROSEN
JUSTIN D. O'CONNELL
LESLIE A. WRIGHT
KRISTEN A. KEARNEY
Date: July 19, 2019          Assistant United States Attorneys

8

Certificate of Service

    I hereby certify this document was filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF) and mailed to all those not participating in ECF.

Date: July 19, 2019                 */s/ Justin D. O'Connell*
                                                  JUSTIN D. O'CONNELL
                                                  Assistant United States Attorney