UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID SIDOO et al.,<br><br>Defendants | No. 1:19-CR-10080-NMG<br><br>(Leave to File Granted 7/22/19 - Dkt. 484) |

**GAMAL ABDELAZIZ'S SUR-REPLY IN SUPPORT OF
HIS RESPONSE TO GOVERNMENT'S MOTION FOR HEARING
REGARDING CONFLICTS OF INTEREST**

Mr. Abdelaziz files this Sur-Reply to clarify three points:

***First***, it remains clear that the government has ignored the very same disqualifying "conflicts" it asserts as to Nixon, Ropes, and Latham for any law firm whose client pleads guilty. Although the government declares itself "duty-bound to bring such conflicts to the Court's attention," Reply at 1 n.1, it chooses to fulfill the duty only for defendants who maintain their innocence. The ostensible reason for the distinction—essentially that attorneys counseling clients to plead guilty cannot be seriously conflicted[1]—is untethered to any authority and directly contradicted by Mr. Abdelaziz's cited cases. *See* Abdelaziz Resp. at 3 (Dkt. 444). The government's "explanation" is also entirely inconsistent with its announcement (prompted by Mr. Abdelaziz's identification of the government's double standard) that it will belatedly seek conflicts hearings for Devin Sloane and Gregory Abbott, both of whom already pled guilty. The government does not state whether these hearings will involve "the appointment of independent ethics counsel and independent counsel to advise the defendants during the inquiry"—as the government suggests may be necessary for the Nixon, Ropes, and Latham clients.

The government's treatment of defendant Bruce Isackson remains particularly troubling. In its opening brief, the government obfuscated as to when it learned of Quinn Emanuel's concurrent representation of USC and Mr. Isackson, stating only that it became aware of the representation after Mr. Isackson's plea agreement was executed. Based on Mr. Abdelaziz's probing, however, the Reply admits that the government was aware of the concurrent representation at the time of Mr. Isackson's Rule 11 hearing. Reply at 5 n.5. Despite that

---

[1] The government accuses Nixon, Ropes, and Latham of having an actual "pecuniary interest" in this case because they are paid by USC and therefore may wish to please USC. *See* Reply at 8. However, all three law firms are representing defendants in this case *despite* USC's objections. The "pecuniary interest" might actually matter for law firms who represent USC (or other purported victims) but counsel their clients to plead guilty— the ultimate "pulling of punches." The government, however, is apparently uninterested in conflicts associated with law firms whose clients plead guilty.

1

awareness, the government declined to notify Chief Judge Saris of the same conflict that is supposedly disqualifying for Nixon, Ropes, and Latham.  The government's excuse—that it "did not learn of U.S.C.'s decision not to waive the conflict until after the hearing itself"—not only demonstrates a "blithe disregard of its responsibilities," Reply at 9, but also continued unwillingness to understand that the defendant's waiver (rather than the purported victim's waiver) is the touchstone of any conflicts inquiry.[2]  Based on these and other facts set forth in Mr. Abdelaziz's Response, the conclusion is inescapable that the government's motive in seeking to disqualify Nixon, Ropes, and Latham is to "infringe upon the right to counsel of choice to gain a tactical advantage."  *United States v. Joyce*, 311 F. Supp. 3d 398, 403-404 (D. Mass. 2018) (Gorton, J.).

*Second*, the government continues to rely on easily distinguishable authority in arguing that Nixon, Ropes, and Latham should be disqualified.  For instance, the government cites *United States v. Bikundi*, 80 F. Supp. 3d 9 (D.D.C. 2015) and *United States v. Locasio,* 357 F. Supp. 2d 536 (S.D.N.Y. 2004) for the proposition that co-counsel cannot resolve the supposed disqualifying conflicts present in this case.  But *Bikundi* and *Locasio* are irrelevant.  The thrust of *Locasio* is about disqualification under the **witness-advocate rule**, not the client conflict of interest rule.  There, the court disqualified defense counsel where the government intended to call a lawyer from defense counsel's law firm to testify against defendant.  In an ancillary discussion of a disqualification under the client conflict of interest rules, the court stated, "it is likely that this conflict, standing alone, would **not** serve as grounds for disqualification."  *Locasio*, 357 F. Supp. 2d. at 557 (emphasis added).  And in *Bikundi*, the conflict of interest was particularly acute because

---

[2] In his Response, Mr. Abdelaziz noted the government's double standard with respect to Sidley Austin LLP, which represents William McGlashan and USC.  The government did not move for a conflicts hearing for Mr. McGlashan because USC waived the perceived conflict.  Now, only after being called out in Mr. Abdelaziz's Response, the government states it will request a conflicts hearing for Mr. McGlashan.  *See* Reply at 6 n.5.

2

defense counsel had previously represented a co-defendant and six companies under investigation **in the very same matter.**  Here, of course, Nixon, Ropes, and Latham represent USC in matters completely unrelated to this case.

*Third*, although Mr. Abdelaziz's brief explains why Nixon Peabody need not rely on USC's waiver, the government's Reply does absolutely nothing to change the fact such a binding waiver exists.  All of the supposed restrictions on the Firm's representation of Mr. Abdelaziz are therefore beside the point.  In light of Mr. Abdelaziz's Response, which demonstrated that the government misread the Rules of Professional Conduct, the government has totally abandoned its argument that USC "revoked" the waiver.  The government now argues that USC's waiver was not effective in the first place.  This is so (in part) because the waiver describes Nixon Peabody's adverse clients as USC's "debtors, creditors, and direct competitors."  Reply at 10.  The government conveniently omits the phrase in the engagement letter that precedes these words ("**including without limitation**").

The implicit argument that a sophisticated institutional client, represented by in-house counsel, could not understand the plain language of Nixon Peabody's engagement letter is illogical.  The government admits that it has found no case analyzing how the advance waiver factors it cites on page 10 of its Reply apply in the criminal context.  Perhaps that is because one of the factors is "the interests of justice," and it is fairly obvious that it is not in the "interests of justice" to deprive a defendant of the constitutional right to counsel of his or her choice in this circumstance.

In essence, the government invites this Court to become the very first court in the United States to deprive a criminal defendant of the constitutional right to counsel of his or her choice based on the invalidation of an advance waiver signed by a concurrent client—in this case, a sophisticated institutional client represented by in-house counsel.  The Court should decline the invitation.

|  |  |
|---|---|
| Dated: July 22, 2019 | Respectfully submitted, |
|  | GAMAL ABDELAZIZ |
|  | By his attorneys, |
|  | */s/ Brian T. Kelly*<br>Brian T. Kelly (BBO No. 549566)<br>Joshua C. Sharp (BBO No. 681439)<br>NIXON PEABODY LLP<br>53 State Street<br>Boston, MA 02109<br>617-345-1000<br>bkelly@nixonpeabody.com<br>jsharp@nixonpeabody.com |
|  | Donald J. Campbell (*pro hac vice*)<br>CAMPBELL & WILLIAMS<br>700 S 7th Street<br>Las Vegas, NV 89101<br>702-382-5222<br>djc@cwlawlv.com |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing was filed electronically on July 22, 2019, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

*/s/ Joshua C. Sharp*
Joshua C. Sharp