UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID SIDOO et al.,<br><br>   Defendants | No. 1:19-CR-10080-NMG<br><br>*Ex Parte* **and Sealed per Dkt. 493**<br><br>**REDACTED VERSION** |

# GAMAL ABDELAZIZ'S *EX PARTE* AND SEALED RESPONSE TO JULY 24, 2019 ORDER

Gamal Abdelaziz files this Response to the Court's July 24, 2019 Order (Dkt. 493) and states as follows:

*First*, although the July 24, 2019 Order states that the Court was first informed of the University of Southern California's ("USC's") objection to Nixon Peabody's representation of Mr. Abdelaziz at the July 23, 2019 *Foster* hearing, undersigned counsel respectfully submits that the fact of USC's objection to Nixon Peabody's, Ropes and Gray's, and Latham and Watkins' participation in these proceedings has been apparent since the government filed its Motion on May 23, 2019. For instance, the government's Motion noted:

- "U.S.C. recently contacted the government to advise of the conflict and of the university's decision not to waive it. Accordingly, the government respectfully requests that the Court conduct an inquiry to determine whether Ropes, Latham and Nixon may continue to represent the U.S.C. defendants in this case absent such a waiver . . . ." Dkt. 400 at 19;

- "[T]he law firms have made several arguments for why their disqualification is not required in the absence of a waiver by U.S.C." *Id.* at 20;

- "[Latham's and Ropes'] failure to secure such a waiver from U.S.C." *Id.* at 22; and

- "[T]he university has advised the government that it does *not* consent to Nixon's representation of Abdelaziz in this case." *Id.* at 25 (emphasis in original).

This fact was also evident in Nixon's, Ropes', and Latham's briefs responding to the government's Motion. *See, e.g.*, Abdelaziz Sur-Reply at 1 n.1 (Dkt. 485) ("[A]ll three law firms are representing defendants in this case *despite* USC's objections."). In light of the fact that the dispute centers around the significance of USC's objection to Nixon's, Ropes', and Latham's participation in these proceedings, undersigned counsel respectfully submits that there is no additional information for the Court to consider, and that the Court should accept Mr. Abdelaziz's July 23, 2019 waiver.

1

***Second*,**  Nixon Peabody does not know why USC has not objected to its law firm Sidley Austin representing a defendant in this case, but has objected to Nixon, Ropes, Latham, and Quinn Emanuel representing defendants in the same case. *See* Abdelaziz Br. at 15 n.8 (Dkt. 444).

***Third***, undersigned counsel wishes to clarify that Nixon Peabody's statement at the hearing was not that USC "does not consent" to the firm's representation of Mr. Abdelaziz, but that USC "objects" to such representation. *See* 7/23/19 Hr'g Tr. at 18:8-14 (Dkt. 506). The distinction is important because, as set forth in Mr. Abdelaziz's Response and Sur-Reply, USC has in fact previously consented to the firm's representation of Mr. Abdelaziz because its general counsel executed a binding advance waiver agreement with Nixon Peabody which USC cannot now revoke.

***Fourth,*** as to the Court's inquiry why Nixon Peabody can continue to represent both USC and Mr. Abdelaziz despite USC's objection, there are two independent reasons, each of which is sufficient. First, USC's consent is not required because there is no direct adversity between Mr. Abdelaziz and USC and there is no material limitation on Nixon Peabody's ability to represent USC. USC is therefore not an "affected" client whose consent is required under Rule of Professional Conduct 1.7. On this point, Mr. Abdelaziz fully adopts Defendant Douglas

2

Hodge's Supplemental Memorandum Regarding Conflicts of Interest (Dkt. 498). Mr. Abdelaziz also refers the Court to pages 6 to 13 of his Response to Government's Motion for Hearing Regarding Conflicts of Interest (Dkt. 444), which explains the lack of direct adversity and material limitation.

As set forth therein, there is no direct adversity, in part, because no USC employee interacted with Mr. Abdelaziz in the context of this case. Mr. Abdelaziz never spoke with or otherwise communicated with any USC employee regarding his daughter's application. No USC employee ever spoke with or otherwise communicated with Mr. Abdelaziz regarding his daughter's application. Therefore, no USC employee has any direct knowledge of Mr. Abdelaziz's alleged participation in the charged conspiracy. Although USC may have information which is perhaps relevant to Mr. Abdelaziz and which co-counsel may request from USC,[1] the key witness in this case with direct knowledge of Mr. Abdelaziz's purported participation in the conspiracy is Mr. Singer, and to a lesser extent Ms. Janke, and Ms. Heinel (neither of whom currently work for USC).

*United States v. Morrell-Corrada*, 343 F. Supp. 2d 80 (D.P.R. 2004) is particularly on point. There, the government sought to disqualify an attorney for a politician charged with extorting contractors building the Puerto Rican "Superaqueduct." The government noted that the defendant's lawyer had previously represented Mr. X, a contractor on the Superaqueduct, with respect to the very same investigation, and that Mr. X was a government witness whom the attorney would need to cross-examine. "The government further argue[d] that the indictment specifically alleges that Mr. X was *victimized by defendant*, and that therefore the interests 'are

---

[1] For instance, to the extent the government has not provided Mr. Abdelaziz with documents related to his daughter's USC application, Mr. Abdelaziz's attorney Donald Campbell, Esq. may seek such documents directly from USC.

3

not only materially adverse, they are diametrical.'" *Id.* at 85 (emphasis added).  But Mr. X, despite being the purported victim of the defendant, and a witness who could testify to certain matters regarding the conspiracy, never had any interaction with the defendant.  *Id.*  The Court therefore denied the government's disqualification motion and found that the government had "grossly tergiversate[d] the facts."  The court further stated:

> Mr. X's anticipated testimony is adverse to defendant only in the sense that the indictment charges a conspiracy, in which defendant is allegedly involved. . . . The government's argument that Mr. X's testimony could corroborate the testimony of others who have direct evidence against defendant also fails to establish direct adversity vis-à-vis defendant.  At most, Mr. X's testimony could be generally adverse, and that falls far short of the direct adversity required under Model Rule 1.9.

*Id.* (internal citations omitted).  Similarly, here, although the government argues that: (1) USC is a victim of the conspiracy; and (2) USC may have background information regarding the conspiracy (but has no direct knowledge of Mr. Abdelaziz's actions), there is no "direct adversity" under the Rules of Professional Conduct.

Next, even if there were a conflict requiring consent (which there is not), USC has in fact consented to the representation through a binding advance waiver that USC's general counsel executed in an engagement letter with Nixon Peabody.  Any potential restrictions on Nixon Peabody's representation of Mr. Abdelaziz are therefore beside the point.  As set forth at pages 15 to 17 of Mr. Abdelaziz's Response (Dkt. 444), USC cannot now revoke the waiver and veto Nixon Peabody's representation of another client.  *See* Restatement (Third) of the Law Governing Lawyers § 122 cmt. f ("Revoking consent to the client's own representation, however, does not necessarily prevent the lawyer from continuing to represent other clients who had been jointly represented along with the revoking client."); *id.* illustration 7 (where Client A provides advance waiver of all conflicts in unrelated matters and Client B later sues Client A in unrelated matter, Client A cannot revoke the waiver).

As to the government's argument that the advance waiver was not valid when entered into, Mr. Abdelaziz refers the Court to page 3 of his Sur-Reply (Dkt. 485). As noted therein, the government admits that it knows of no case analyzing the advance waiver factors in the context of a criminal case. Undersigned counsel notes that one of the factors is the "interests of justice" and that it would not be in the "interests of justice" to deny a criminal defendant the Sixth Amendment right to counsel of his or her choice based on the invalidation of an advance waiver signed by a sophisticated institutional client represented by in-house counsel. There is no reason for this Court to become the very first court in the United States to deprive a defendant of the constitutional right to counsel of his or her choice in this circumstance.

In summary, Nixon Peabody has determined that USC's objection is not determinative under the Rules of Professional Conduct because: (1) there is no direct adversity between Mr. Abdelaziz and USC; and (2) even if there were direct adversity between Mr. Abdelaziz and USC, USC cannot unilaterally revoke the conflicts waiver it executed and essentially "veto" Nixon Peabody's representation of another client. USC's objection is therefore a request from a client that Nixon Peabody not undertake another representation. Although Nixon Peabody respects USC's right to make that request, Nixon Peabody cannot allow one client's objections to the firm's representation of another client control the firm's actions where the firm has determined that it is in full compliance with the Rules of Professional Conduct. *See United States v. Santiago-Lugo,* 167 F.3d 81, 84 (1st Cir. 1999) (noting that "although a district court must inquire when advised of a potential conflict of interest, the court may rely on counsel's representations that no such conflict exists").

Dated: July 29, 2019

Respectfully submitted,

GAMAL ABDELAZIZ

By his attorneys,

*/s/ Brian T. Kelly*
Brian T. Kelly (BBO No. 549566)
Joshua C. Sharp (BBO No. 681439)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109
617-345-1000
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com

Donald J. Campbell (*pro hac vice*)
CAMPBELL & WILLIAMS
700 S 7th Street
Las Vegas, NV 89101
702-382-5222
djc@cwlawlv.com