UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID SIDOO et al.,<br><br>            Defendants | No. 1:19-CR-10080-NMG |

**[PROPOSED]**
**GAMAL ABDELAZIZ'S REPLY IN SUPPORT OF**
**MOTION TO COMPEL PRODUCTION OF *BRADY* MATERIAL**

The government's Opposition to Mr. Abdelaziz's Motion makes clear that, at least in the context of this case, the government does not understand its "constitutional duty to disclose to a defendant material exculpatory evidence." *United States v. Jones*, 620 F. Supp. 2d 163, 168 (D. Mass. 2009). Not only has the government failed to provide any reasoned basis for refusing to disclose the *Brady* materials sought by Mr. Abdelaziz's Motion, but the government's Opposition, and an accompanying letter of the same date, show that the government has engaged in an additional *Brady* violation that was unknown to, and could not have been discovered by, undersigned counsel. These violations of Mr. Abdelaziz's constitutional rights warrant relief to ensure that the government fulfills its *Brady* obligations.

**A. The Materials Sought By Mr. Abdelaziz's Motion Must Be Disclosed**

Mr. Abdelaziz's Motion sought all evidence (including FBI 302 reports) reflecting what was essentially a "side deal" between Mr. Singer and Ms. Heinel to divert Mr. Abdelaziz's donation as a personal bribe to Ms. Heinel. The government makes two arguments in response

to Mr. Abdelaziz's motion: first that that the motion is moot, and second that the material sought is not exculpatory.

The government's mootness argument is premised on the idea that "the government has already disclosed the requested information" to Mr. Abdelaziz. *See* Opp. at 1. However the government has not disclosed the information Mr. Abdelaziz seeks—"[a]n FBI report or other evidence of a subsequent agreement between Mr. Singer and Ms. Heinel . . . for Mr. Abdelaziz's donation to the university to be diverted as a personal bribe." Motion at 4. Instead, the government has produced what it calls "the substance of the witness statement Abdelaziz seeks." Opp. at 8. In other words, the government has provided its own self-serving paraphrase of the FBI interview report. But the government's summary of the evidence is insufficient. It does not explain what additional detail Mr. Singer provided about the "side deal" and does not state with any precision when the deal was struck. Mr. Abdelaziz is entitled to the FBI report(s) in which Mr. Singer discloses the "side deal," which in any case must eventually be disclosed as *Jencks* material if Mr. Singer testifies.[1]

The government's second argument—that the requested material is not exculpatory—is more troubling because it reflects a disregard of basic *Brady* principles. In short, the requested material is exculpatory because it will likely show that Mr. Singer struck his "side deal" with Ms. Heinel months *after* Mr. Abdelaziz's daughter was admitted to USC and months *after* Mr. Abdelaziz made the donation he thought would be routed to the USC athletics department. Consequently, Mr. Abdelaziz could not have been aware of the alleged "side deal" to re-route the donation to Ms. Heinel, or the inclusion of his daughter's name on an invoice generated by Ms.

---

[1] Underscoring the weakness of its case, the government has declined to commit to calling Mr. Singer at trial, presumably because he is a deeply compromised witness who obstructed justice even *after* he started cooperating with the government.

2

Heinel at Mr. Singer's urging after he began to cooperate, and therefore Mr. Abdelaziz did not have the requisite intent to bribe Ms. Heinel.  *See* Motion at 3-5.

The government's response is that even if a donation is made to a "USC fund over which Heinel exercised discretion [rather than] to her own personal account," Opp. at 11, the payment is nonetheless a bribe.  In other words, a payment to the *very same institution* that is allegedly defrauded of its employee's honest services is a bribe under federal law.  This dubious argument is unsupported by the government's two cited cases, which do not involve an employee directing a "bribe" to his or her own employer's bank accounts, but rather involve: (1) a defendant "caus[ing] large sums of money to be paid to [defendant's] brother and father," *United States v. DeMizio*, 741 F.3d 373, 374 (2d Cir. 2014); and (2) "kickback payments made to third parties for [defendant's] personal benefit or entities in which [defendant] had some interest" *United States v. Hausmann,* 345 F.3d 952, 956 (7th Cir. 2003).  Indeed, Judge Woodlock recently scoffed at the government's theory, calling this "a case in search of a bribe or kickback" and asking "where do we have that [defendant] thought that this was or believed that this was money going to Ms. Heinel as a faithless employee as opposed to the institution itself[?]"  Bizzack Sent'g Tr. at 16:3-4, 24:20-23, *United States v. Bizzack*, 19-CR-10222-DPW (D. Mass. Oct. 30, 2019).  The government is certainly entitled to advance a novel legal theory at future stages of litigation but cannot simply assume that this Court will accept that theory as correct, and on that basis refuse to provide Mr. Abdelaziz with exculpatory evidence.

Notwithstanding the government's unsupported legal argument, whether a payment to a "USC fund over which [Ms. Heinel] exercised discretion [rather than] to her own personal account" could ever constitute a bribe is a red herring for purposes of this Motion.  Mr. Abdelaziz seeks the requested materials to show that he did not have the requisite **intent** to bribe

3

anyone, regardless of whether or not Ms. Heinel could be convicted for directing "bribes" to her employer's own coffers. As to Mr. Abdelaziz, "[t]he Government must prove not only purposeful action, but also that the Defendant knew the payments he [made] were bribes." *United States v. Mister*, 553 F. Supp. 2d 377, 387 (D.N.J. 2008). Yet the government's response remains more or less what it was originally—essentially that because Mr. Abdelaziz is **alleged** to have had corrupt intent from the moment he agreed to make a donation, nothing else matters. *See* Opp. at 11 n.2 (noting that Mr. Abdelaziz is "alleged to have agreed with Singer"); Motion, Ex. A. at 2 n.3 ("It is difficult to imagine how such evidence—particularly when it [came into existence] . . . after he agreed to commit the charged offense—could be material to [his] defense.").

B. **The Government's Fundamental Misunderstanding Of Its Brady Obligations Demonstrates That Further Relief Is Necessary**

In an unsolicited letter dated November 27, 2019, the government stated it had "re-reviewed the FBI 302 reports of witness interviews in this case and—**although we do not believe that any of the information set forth below is exculpatory**—we are disclosing it to you in an abundance of caution" (emphasis added). Among the government's disclosures were that "Singer has advised the government, in sum and in substance," that:

> Singer told Abdelaziz that the money would be directed to a USC program associated with the individual at USC who helped get his daughter admitted to the university.

The government then stated that it was "aware of the continuing nature of our discovery obligations, and we will continue to make additional disclosures as required"— as if the FBI 302 report was somehow recently uncovered and was not in the government's files from the very beginning of the case.

4

Until receiving this letter, undersigned counsel was not—and could not have been aware—that Mr. Singer admitted to the government that he told Mr. Abdelaziz his donation would be directed to a "USC program." It is astonishing that the government cannot understand that evidence suggesting **Mr. Singer told Mr. Abdelaziz that his money was going directly to USC** is exculpatory.[2] This information was required to have been disclosed to Mr. Abdelaziz by May 30, 2019, pursuant to the Local Rules and this Court's order. *See* Dkt. 369. But the information has dribbled out nearly six months later—"in sum and in substance" form—with the absurd disclaimer that, in any case, it is not actually *Brady*.

Perhaps the government really does believe that if the Athletic Director of a private college assists in the admission of Student A in return for a donation to the private college's athletic department, then the parents of Student A have committed a federal crime. But, once again, Mr. Abdelaziz is not bound to accept the government's untested legal theory for purposes of mounting his defense, and neither is the government allowed to assume that its novel legal theory will prevail for purposes of fulfilling its constitutional obligations to provide the defendant with exculpatory evidence. *See, e.g.*, *United States v. Mahaffy,* 693 F.3d 113, 130 (2d Cir. 2012) ("The transcripts contained substantial *Brady* material, much of which was easily identified as such. The fact that the government is able to argue that portions of the transcripts were consistent with the prosecution's theory fails to lessen the exculpatory force . . . .").

"The district court has broad discretion to redress discovery violations in light of their seriousness and any prejudice occasioned the defendant." *United States v. Josleyn*, 99 F.3d

---

[2] It is particularly striking that government does not recognize the exculpatory nature of this evidence even after Judge Woodlock's rigorous questioning of the government as to what Mr. Singer told Defendant Bizzack about his donation. For instance, Judge Woodlock asked, "Mr. Singer apparently extracted from the defendant $250,000. Did he tell him all $250,000 is going to go to Ms. [Heinel]? Did he tell him $50,000 was going to Ms. [Heinel]? Did he tell him $70,000 was going to Ms. [Heinel]? What did he tell him that would give [defendant] some reasonable foreseeability with respect to this amount?" Bizzack Sent'g Tr. at 20:25-21:5.

1182, 1196 (1st Cir. 1996). Based on the government's "inexcusable ignorance, or a reckless disregard, of a constitutional duty, and of the requirements of the Local Rules," *Jones*, 620 F. Supp. 2d at 168, Mr. Abdelaziz respectfully requests that the Court order the government to produce to Mr. Abdelaziz all records (including all FBI 302 reports and agent notes) regarding what Mr. Singer conveyed to Mr. Abdelaziz about his donation and Mr. Abdelaziz's daughter's admission to USC.

Dated: December 5, 2019

Respectfully submitted,

GAMAL ABDELAZIZ

By his attorneys,

*/s/*
Brian T. Kelly (BBO No. 549566)
Joshua C. Sharp (BBO No. 681439)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109
617-345-1000
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com

Donald J. Campbell (*pro hac vice*)
CAMPBELL & WILLIAMS
700 S 7th Street
Las Vegas, NV 89101
702-382-5222
djc@cwlawlv.com