UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID SIDOO et al.,<br><br>Defendants | No. 1:19-CR-10080-NMG |

### SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DKT. 681
### OR ALTERNATIVELY
### EMERGENCY MOTION FOR PRODUCTION OF
### EXCULPATORY CONSENSUAL RECORDINGS

On December 9, 2019, Defendants filed a Motion requesting "all non-minimized interceptions resulting from the execution of the four Title III Orders . . . as well as any and **all consensual recordings** and text messages that were initiated or received by Rick Singer after he commenced his cooperation in September 2018." Dkt. 681. In light of the recent government disclosure, Gamal Abdelaziz submits this Supplemental Memorandum in support of Dkt. 681, or in the alternative, requests emergency relief in the form of a Court order requiring the government to immediately disclose consensual recordings of Mr. Singer's communications with federal agents. In particular, Mr. Abdelaziz requests the audio of the October 2, 2018 phone call between Mr. Singer and federal agents in which the agents counseled Mr. Singer to "tell a fib" and "bend the truth."

    A.    **The Abdelaziz Letter and the Government's Disclosure**

On February 19, 2020, undersigned counsel sent a discovery letter (attached hereto as Exhibit 1) regarding the unproduced extraction of Rick Singer's cellphone. The letter expressed

1

serious concerns that: (1) the government had not produced an extraction of Mr. Singer's phone containing all *Brady* and other evidence required to be produced by the Federal Rules of Criminal Procedure;[1] (2) the limited extraction the government produced showed additional acts of obstruction of justice and destruction of evidence by Mr. Singer (both before and after he became a government cooperator) which the government had not disclosed; and (3) while Mr. Singer was a cooperating witness (and *de facto* government agent), the government became aware that Mr. Singer destroyed evidence, knew that such evidence was exculpatory (or at the very least subject to disclosure under *Jencks*), but took no steps to recover the destroyed evidence. The government has not yet responded to the letter.

After receiving notice that the extractions of Mr. Singer's phone would soon become the focus of litigation before this Court, yesterday the government provided an extraction of the "notes" from Mr. Singer's cellphone. By the government's own admission, the prosecution team was in possession of the "notes" since October 5, 2018 but did not disclose them to defense counsel until yesterday. *See* Feb. 26, 2020 Letter to Counsel (attached hereto as Exhibit 2). In the October 2, 2018 notes entry, Mr. Singer wrote:

> Loud and abrasive **call** with agents. They continue to ask me to tell a fib and not restate what I told my clients as to where there money was going -to the program not the coach and that it was a donation and they want it to be a payment. I asked for a script if they want me to ask questions and retrieve responses that are not accurate to the way I should be asking the questions. Essentially they are asking me to bend the truth which is what they asked me not to do when working with the agents and Eric Rosen. Liz raised her voice to me like she did in the hotel room about agreeing with her that everyone Bribed the schools. (emphasis added).

The government's explanation for why it waited a year to disclose clearly exculpatory evidence is that it assumed the notes were "privileged," but that "this week" Mr. Singer's

---

[1] Underscoring the incompleteness of the government's production of the phone extraction, in the recently produced notes, Mr. Singer states that he received a text message from Donna Heinel on October 5, 2018. However, the government's productions do not contain a text message from Donna Heinel on October 5, 2018.

counsel agreed to waive privilege. As an initial matter, even if the government subjectively believed that the notes were privileged, there is no indication that Mr. Singer ever asserted the privilege, which is required to avoid waiver. Further, as demonstrated by the government's previous productions, on multiple occasions Mr. Singer provided affirmative, written consent for the FBI to search and review all information contained on his cellphone, thereby waiving any privilege that might have existed.[2]

### B.  Relevance of Consensual Recordings

As indicated by Mr. Singer's consent form and a letter to AT&T (attached hereto as Exhibit 3), the government did not use a typical recording device to monitor Mr. Singer's calls once he became a cooperator. Instead, the government used—essentially—a "consensual wiretap." In other words, the same technology was used to monitor Mr. Singer's cellphone as would have been used in a Title III wiretap. The only difference is that there was not an agent monitoring (and minimizing) Mr. Singer's calls in real time. Instead, *all of Mr. Singer's calls* were likely recorded. This is corroborated by the government's statements in one of its filings that "of the approximately **52 hours** of consensual recordings deemed non-pertinent, over **30 hours** are calls between Singer and members of his family or women he dated." *See* Dkt. 734 (emphasis added). Of course, if Mr. Singer were to call a federal agent from his cellphone, those calls would also be recorded. And if those calls contained *Brady* material, the Constitution requires that they be disclosed to defendants. To date, the government has provided linesheets of the Title III recordings, but has **not** provided linesheets of the consensual recordings.

---

[2] The government's explanation for the timing of its disclosure is suspect. The government made it seem as if Mr. Singer's lawyer somehow happened to have decided to waive privilege "this week," just in time for the hearing before Judge Gorton. The government does not disclose *when* it first asked Mr. Singer's lawyer to waive the privilege nor does it explain why Mr. Singer's lawyer controls the privilege—which also does not make sense.

In this case, the prosecutors were on notice as of October 28, 2018 (when they admit they first reviewed the supposedly privileged "notes") that, in Mr. Singer's view, there was a "**loud and abrasive call**" on October 2, 2018 in which a federal agent told him to lie to Defendants and "bend the truth" about his scheme. Clearly, recordings of calls between Mr. Singer and federal agents are not privileged. The prosecutors were therefore obligated to immediately review the recording of the October 2, 2018 call and disclose it to Defendants. But it is unclear if the prosecutors ever reviewed the recording, and they never disclosed it, even while they made a separate determination of whether Mr. Singer's notes were or were not privileged. The prosecution's failure to review the audio and disclose it to defendants—which could not possibly have been related to any privilege concerns—is a grave violation of Defendants' constitutional rights.

Mr. Abdelaziz requests that the Court consider the newly discovered evidence, which demonstrates why all the non-disclosed consensual calls should be produced, in rendering a decision on Dkt. 681.[3] That Mr. Singer asserted to federal agents that parents believed and/or were told they were making donations to USC and that he was directed to substitute "bribes" for "donations" is highly exculpatory.

Alternatively, for the reasons stated above, Mr. Abdelaziz respectfully requests that the Court order the government, by March 5, 2020, to: (1) produce all recordings of Mr. Singer's calls with government agents, including the October 2, 2018 call; (2) state whether or not any recordings of Mr. Singer's calls with government agents have been destroyed; (3) if so, identify the date and the reason for the destruction; (4) state whether or not Mr. Singer had a "burner" phone which he used to speak with federal agents and provide call logs and full extractions of

---

[3] Mr. Zangrillo, through his counsel Martin Weinberg, joins in this request.

that phone. Mr. Abdelaziz further states that emergency relief is necessary because Judge Gorton has ordered Defendants to file motions to suppress and motions for sanctions by March 13, 2020 and the information requested by Mr. Abdelaziz is necessary to adequately draft such motions.

Dated: February 27, 2020

Respectfully submitted,

GAMAL ABDELAZIZ

By his attorneys,

*/s/ Brian T. Kelly*
Brian T. Kelly (BBO No. 549566)
Joshua C. Sharp (BBO No. 681439)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109
617-345-1000
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com

Donald J. Campbell (*pro hac vice*)
CAMPBELL & WILLIAMS
700 S 7th Street
Las Vegas, NV 89101
702-382-5222
djc@cwlawlv.com