UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID SIDOO et al.,<br><br>Defendants | No. 1:19-CR-10080-NMG |

**MOTION TO COMPEL PRODUCTION
OF PURPORTEDLY PRIVILEGED MATERIALS**

Defendant Gamal Abdelaziz respectfully moves to compel the government to produce all of Mr. Singer's telephone calls on or after September 27, 2018 and all of Mr. Singer's email communications on or after September 29, 2018, as well as all discoverable materials taken from extractions of Mr. Singer's Apple iPhone 7+, Dell computer, Mac laptop, LG phone, and Apple Watch. The government is withholding some subset of these materials on the grounds that they are protected from disclosure by the attorney-client privilege. The government has advised the Court that it will provide a privilege log to defense counsel by May 15, 2020. *See* Dkt. 1071 at 3. Given, however, that Mr. Singer voluntarily consented to the FBI taking possession of his iPhone 7+, his Dell computer, his Mac laptop, his LG phone, and his Apple watch, and that Mr. Singer voluntarily consented to the FBI monitoring his email and telephonic communications, a privilege log is unnecessary. All privilege has been waived.

### I. Mr. Singer Consented to Federal Agents Taking Possession of His Electronic Devices and Monitoring His Communications on Multiple Occasions

On at least **fifteen** occasions on or after September 27, 2018, Mr. Singer consented to the FBI taking possession of his electronic devices and monitoring his electronic and telephonic communications:

- On September 27, 2018, Mr. Singer "consent[ed] to the interception and recording of any and all communications made by me over all telephones," stated that his "consent extends to all communications over any such phone, whether or not that communication relates to a criminal investigation, to any and all messages left on any voicemail feature of any such phone, photographs taken using the phone, and text messaging," and further "consent[ed] to the disclosure of any information or records regarding such communications to law enforcement agents." *See* Exhibit A (SINGER-VOL-016-005158).

- On September 29, 2018, **in the presence of his attorney Donald Heller**, AUSAs Justin O'Connell and Eric Rosen, and federal agents Kaitlyn Cedrone, Elizabeth Keating, and Nicholas Savona, Mr. Singer "logged into each of his [email] accounts and created a forwarding rule to have a copy of all email communication sent to [an account created by the FBI]. SINGER understood that by creating this account, all of his email communications would be accessible by case agents." *See* Exhibit B (SINGER-VOL09-056739).

- On October 5, 2018, Mr. Singer authorized the FBI to "complete a search of" his iPhone 7+ and provided the FBI with his password. Mr. Singer attested that he was "advised of my right to refuse consent," that he "give[s] this permission voluntarily" and that he "authorize[s] these agents to take any items which they determine may be related to their investigation." *See* Exhibit C (SINGER-VOL-016-005141 to SINGER-VOL-016-005146).

- On October 23, 2018, October 24, 2018, October 25, 2018, and October, 26 2018, Mr. Singer authorized the FBI to "complete a search of" a black Nike national championship backpack containing, among other things, an iPhone7+, a Mac laptop model A1707, and an Apple Watch. Mr. Singer attested that he was "advised of my right to refuse consent," that he "give[s] this permission voluntarily" and that he "authorize[s] these agents to take any items which they determine may be related to their investigation." *See* Exhibit D (SINGER-VOL-016-005131 to SINGER-VOL-016-005134).

- On October 31, 2018, Mr. Singer authorized the FBI to "complete a search of" a Mac laptop model A1707. Mr. Singer attested that he was "advised of my right to refuse consent," that he "give[s] this permission voluntarily" and that he "authorize[s] these agents to take any items which they determine may be related to their investigation." He further attested that the laptop "was removed from my custody by Special Agents of the Federal Bureau of Investigation, U.S. Department of Justice." *See* Exhibit E (SINGER-VOL-016-005135 to SINGER-VOL-016-005138).

- On October 31, 2018, Singer authorized the FBI to "complete a search of" his home in order "to take LG black cell phone out of center console of black Tesla SUV." Mr. Singer attested that he was "advised of my right to refuse consent," that he "give[s] this permission voluntarily" and that he "authorize[s] these agents to take any items which they determine may be related to their investigation." He further attested that "the LG black cell phone was removed from my custody by Special Agents of the Federal Bureau of Investigation, U.S. Department of Justice." *See* Exhibit F (SINGER-VOL-016-005139 to SINGER-VOL-016-005140).

- On November 1, 2018, Mr. Singer executed an FBI "consent to search computer(s)" form. Mr. Singer attested that he had "been asked by Special Agents of the Federal Bureau of Investigation (FBI) to permit a complete search by the FBI or its designees of any and all computers, any electronic and/or optical data storage and/or retrieval system or medium, and any related computer peripherals described below: iPhone 7 plus . . . ." Mr. Singer attested that "I have been advised of my right to refuse to consent to this search, and I give permission for this search freely and voluntarily, and not as the result of threats or promises of any kind." Mr. Singer provided the FBI with his password. He further attested that "I authorize those Agents to take any evidence discovered during this search, together with the medium in/on which it is stored, and any associated data, hardware, software and computer peripherals," and that the "iPhone 7 plus was removed from my custody by those Agents." *See* Exhibit G (SINGER-VOL-016-005188 to SINGER-VOL-016-005191).

- On November 29, 2018, Mr. Singer executed an FBI "consent to search computer(s)" form. Mr. Singer attested that he had "been asked by Special Agents of the Federal Bureau of Investigation (FBI) to permit a complete search by the FBI or its designees of any and all computers, any electronic and/or optical data storage and/or retrieval system or medium, and any related computer peripherals described below: iPhone 7 plus . . . ." Mr. Singer attested that "I have been advised of my right to refuse to consent to this search, and I give permission for this search freely and voluntarily, and not as the result of threats or promises of any kind." He further attested that "I authorize those Agents to take any evidence discovered during this search, together with the medium in/on which it is stored, and any associated data, hardware, software and computer peripherals," and that the "iPhone 7 plus was removed from my custody by those Agents." *See* Exhibit H (SINGER-VOL-016-005149 to SINGER-VOL-016-005152).

- On November 30, 2018, Mr. Singer "consent[ed] to the interception and recording of any and all communications made by me over all telephones," stated that his "consent extends to all communications over any such phone, whether or not that communication relates to a criminal investigation, to any and all messages left on any voicemail feature of any such phone, photographs taken using the phone, and text messaging," and further "consent[ed] to the disclosure of any information or records regarding such communications to law enforcement agents." *See* Exhibit I (SINGER-VOL-016-005156).

- On December 20, 2018, Mr. Singer "consent[ed] to the interception and recording of any and all communications made by me over all telephones," stated that his "consent extends

to all communications over any such phone, whether or not that communication relates to a criminal investigation, to any and all messages left on any voicemail feature of any such phone, photographs taken using the phone, and text messaging," and further "consent[ed] to the disclosure of any information or records regarding such communications to law enforcement agents." *See* Exhibit J (SINGER-VOL-016-005198).

- On January 3, 2019, Mr. Singer executed an FBI "consent to search computer(s)" form. Mr. Singer attested that he had "been asked by Special Agents of the Federal Bureau of Investigation (FBI) to permit a complete search by the FBI or its designees of any and all computers, any electronic and/or optical data storage and/or retrieval system or medium, and any related computer peripherals described below: iPhone 7+. . . ." Mr. Singer attested that "I have been advised of my right to refuse to consent to this search, and I give permission for this search freely and voluntarily, and not as the result of threats or promises of any kind." He further attested that "I authorize those Agents to take any evidence discovered during this search, together with the medium in/on which it is stored, and any associated data, hardware, software and computer peripherals." *See* Exhibit K (SINGER-VOL-016-005193 to SINGER-VOL-016-005195).

- On February 15, 2019, Mr. Singer executed an FBI "consent to search computer(s)" form. Mr. Singer attested that he had "been asked by Special Agents of the Federal Bureau of Investigation (FBI) to permit a complete search by the FBI or its designees of any and all computers, any electronic and/or optical data storage and/or retrieval system or medium, and any related computer peripherals described below: iPhone 7+. . . ." Mr. Singer attested that "I have been advised of my right to refuse to consent to this search, and I give permission for this search freely and voluntarily, and not as the result of threats or promises of any kind." Mr. Singer provided the FBI with his password. He further attested that "I authorize those Agents to take any evidence discovered during this search, together with the medium in/on which it is stored, and any associated data, hardware, software and computer peripherals," and that the "iPhone 7+ was removed from my custody by those Agents." *See* Exhibit L (SINGER-VOL-016-005207 to SINGER-VOL-016-005209).

- On February 28, 2019, Mr. Singer executed an FBI "consent to search computer(s)" form. Mr. Singer attested that he had "been asked by Special Agents of the Federal Bureau of Investigation (FBI) to permit a complete search by the FBI or its designees of any and all computers, any electronic and/or optical data storage and/or retrieval system or medium, and any related computer peripherals described below: iPhone 7+. . . ." Mr. Singer attested that "I have been advised of my right to refuse to consent to this search, and I give permission for this search freely and voluntarily, and not as the result of threats or promises of any kind." He further attested that "I authorize those Agents to take any evidence discovered during this search, together with the medium in/on which it is stored, and any associated data, hardware, software and computer peripherals," and that the "iPhone 7+ was removed from my custody by those Agents." *See* Exhibit M (SINGER-VOL-016-005211 to SINGER-VOL-016-005214).

- On March 11, 2019, Mr. Singer executed an FBI "consent to search computer(s)" form. Mr. Singer attested that he had "been asked by Special Agents of the Federal Bureau of

Investigation (FBI) to permit a complete search by the FBI or its designees of any and all computers, any electronic and/or optical data storage and/or retrieval system or medium, and any related computer peripherals described below: iPhone 7+. . . ." Mr. Singer attested that "I have been advised of my right to refuse to consent to this search, and I give permission for this search freely and voluntarily, and not as the result of threats or promises of any kind." He further attested that "I authorize those Agents to take any evidence discovered during this search, together with the medium in/on which it is stored, and any associated data, hardware, software and computer peripherals," and that the "iPhone 7+ was removed from my custody by those Agents." *See* Exhibit N (SINGER-VOL-016-005218 to SINGER-VOL-016-005221).

- On May 7, 2019, Mr. Singer executed an FBI "consent to search computer(s)" form. Mr. Singer attested that he had "been asked by Special Agents of the Federal Bureau of Investigation (FBI) to permit a complete search by the FBI or its designees of any and all computers, any electronic and/or optical data storage and/or retrieval system or medium, and any related computer peripherals described below: Dell XPS 8700." Mr. Singer attested that "I have been advised of my right to refuse to consent to this search, and I give permission for this search freely and voluntarily, and not as the result of threats or promises of any kind." He further attested that "I authorize those Agents to take any evidence discovered during this search, together with the medium in/on which it is stored, and any associated data, hardware, software and computer peripherals." *See* Exhibit O (SINGER-VOL016-005228).

**II. All Privilege Has Been Waived**

When Mr. Singer consented to federal agents searching his electronic devices, he waived whatever privilege may have existed for documents stored on those devices. It is black letter law that the attorney-client privilege requires "[a]n intent to maintain confidentiality." *United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 684 (1st Cir. 1997). *See also In re Grand Jury Subpoena (Zerendow),* 925 F. Supp. 849, 855 (D. Mass. 1995) ("Patently, a voluntary disclosure of information which is inconsistent with the confidential nature of the attorney client relationship waives the privilege." (quoting *Alldread v. City of Grenada*, 988 F.2d 1425, 1434 (5th Cir.1993))). Certainly Mr. Singer did not intend to maintain confidentiality over his devices when he voluntarily handed them off to the FBI. Whether Mr. Singer specifically intended to waive privilege is irrelevant. *See* Restatement (Third) of the Law Governing Lawyers § 79 (2000) cmt. g ("The disclosing person need not be aware that the communication was privileged,

nor specifically intend to waive the privilege."); *id.* cmt. h ("A subsequent disclosure through a voluntary act constitutes a waiver even though not intended to have that effect.").

This exact issue was before the court in *United States v. Gen. Mar. Mgmt. (Portugal) L.D.A.*, No. 08-393, 2008 WL 2810594 (S.D. Tex. July 21, 2008). In that case, a material witness "provided the government with his personal computer, at the government's request, for purposes of allowing the government to search his computer hard drive." *Id.* at *1. Defendants requested the hard drive. Both the government and the material witness resisted on the basis that the hard drive contained privileged materials. *Id.* The court relied on the bedrock principle that "disclosure of attorney-client communications to a third party lacking a common legal interest will result in a waiver of the attorney-client privilege," and found:

> Thus, [witness's] voluntary disclosure of his computer to the government and grant of permission to 'search [the] computer hard drive for images [. . .] and create a forensically sound image of the hard drive,' waived his attorney-client privilege with respect to all of the materials contained on the hard drive. [Witness] may not, after giving the government unlimited access to his hard drive's contents, deny that same access to Defendants.

*Id.* at 2. The same result would obtain if someone gave the government blanket permission to search an office or vehicle, and then asserted privilege over any documents found therein. *See United States v. Masih*, No. 2:09-CR-24, 2010 WL 3491219, at *3 (N.D.W. Va. Aug. 31, 2010) ("Therefore, as to [defendant], but for the consent to search, the document would . . . not be disclosed because it constitutes attorney client privilege. However, since it was located during the consensual search of the car, the consent waives the privilege.").

With respect to the telephonic and electronic communications that Mr. Singer prospectively permitted the government to read and listen to, there is even more reason for the Court to order disclosure. Unlike communications on Mr. Singer's devices which may have been privileged *at some point in time*, the privilege *never* attached to Mr. Singer's telephone

6

communications after September 27, 2018 and his email communications after September 29, 2018.  The attorney-client privilege only exists if "the circumstances . . . indicate that the communicating persons reasonably believed that the communication would be confidential." Restatement (Third) of the Law Governing Lawyers § 71 (2000).  After giving the government carte blanche to monitor his emails and telephone calls, Mr. Singer could not have "reasonably believed that the communication[s] would be confidential."  *See also id.* cmt. b ("[C]ommunication in a nonconfidential setting evidences that secrecy was not a consideration even if it is later protested that confidentiality was intended.").  *Cf. United States v. Hatcher*, 323 F.3d 666, 674 (8th Cir. 2003) ("The presence of the prison recording device destroyed the attorney-client privilege.  Because the inmates and their lawyers were aware that their conversations were being recorded, they could not reasonably expect that their conversations would remain private."); *United States v. Mejia*, 655 F.3d 126, 133 (2d Cir. 2011) (same).

### III.     The Court Should Order Disclosure of Purportedly Privileged Materials

For the foregoing reasons, Defendant Gamal Abdelaziz respectfully requests that the Court issue an Order requiring the government to produce all of Mr. Singer's telephone calls on or after September 27, 2018 and all of Mr. Singer's email communications on or after September 29, 2018, as well as all discoverable materials taken from extractions of Mr. Singer's Apple iPhone 7+, Dell computer, Mac laptop, LG phone, and Apple Watch.

Dated:  April 17, 2020                                             Respectfully submitted,

*/s/ Brian T. Kelly*
Brian T. Kelly (BBO No. 549566)
Joshua C. Sharp (BBO No. 681439)
Lauren M. Maynard (BBO No. 698742)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109
617-345-1000

        bkelly@nixonpeabody.com
        jsharp@nixonpeabody.com
        lmaynard@nixonpeabody.com

        Robert Sheketoff (BBO No. 457340)
        One McKinley Square
        Boston, MA 02109
        617-367-3449

        *Counsel for Gamal Abdelaziz*

## LOCAL RULE 7.1(A)(2) CERTIFICATION

I hereby certify that I conferred with counsel for the government in an attempt to resolve or narrow the issues raised by this motion but the parties were unable to reach agreement.

        */s/ Brian T. Kelly*
        Brian T. Kelly

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing was filed electronically on April 17, 2020, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

        */s/ Brian T. Kelly*
        Brian T. Kelly