## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

GREGORY COLBURN, et al.,

Defendants.

Cr. No. 19-10080-NMG

(leave to file partially *ex parte* granted 7/27/21)

## DEFENDANTS' MOTION FOR AN ORDER
## OF WITNESS IMMUNITY

## (FOOTNOTES 1 AND 2 SEALED)

Defendants Gamal Abdelaziz, Elisabeth Kimmel, Marci Palatella, and John Wilson respectfully request that the Court compel the government to grant immunity to former USC Athletics employees Ron Orr, Stephen Lopes, and Scott Jacobson.  Messrs. Orr, Lopes, and Jacobson (the "Athletics Fundraising Witnesses") would, if immunized, offer key exculpatory testimony at trial that is otherwise unavailable to defendants. The government has declined to provide any reason whatsoever for withholding immunity from these witnesses, but it is clear the government has no good-faith reason for doing so. The government started this investigation nearly three years ago and has never suggested that the Athletics Fundraising Witnesses are targets.  Significantly, the witnesses were not among the list of **over 75 unindicted co-conspirators** that the government sent the defendants on May 30, 2019.  Although the government refuses to explain why it will not grant these witnesses immunity, the only possible purpose is to prevent the jury from hearing the key exculpatory evidence that these witnesses will offer at trial, and therefore to distort the fact-finding process.

## I.       Factual and Legal Background

Defendants recently served trial subpoenas on the Athletics Fundraising Witnesses. Counsel for the witnesses then informed Defendants that the witnesses intend to invoke their Fifth Amendment rights, and will refuse to testify at trial.  Because Defendants' due process rights will be severely impaired if these witnesses cannot testify, on July 7, 2021, the undersigned sent a letter to Assistant United States Attorney Stephen Frank explaining the importance of the Athletics Fundraising Witnesses' testimony and requesting that the government grant them immunity so that the jury could hear all relevant evidence.  *See* Exhibit A.  On July 21, 2021, the government informed undersigned counsel that it would not grant immunity to these witnesses.  *See* Exhibit B. The government did not provide any reason why it was declining Defendants' request.

While the Court lacks authority to grant immunity directly, the Court has the power to require that the government grant immunity for a defense witness, or else dismiss the case.  *See United States v. Angiulo*, 897 F.2d 1169, 1190-92 (1st Cir. 1990).  The Court may force the government's hand in this manner where a defendant's constitutional rights are being violated, as they are here, by the government's refusal to immunize a defense witness.  As the *Angiulo* case stated, "If a prosecutor abuses her discretion by intentionally attempting to distort the fact-finding process, then a due process violation exists and a court may order the prosecutor to grant immunity or face a judgment of acquittal."  *Id.* at 1192.  Defendants can demonstrate a "distortion" of the fact-finding process either "by showing an attempt to harass or intimidate potential witnesses, or by showing that the prosecutor deliberately withheld immunity for the purpose of hiding exculpatory evidence from the jury."  *Curtis v. Duval*, 124 F.3d 1, 9 (1st Cir. 1997).  Here, it is clear that the government is denying immunity in an attempt to hide exculpatory evidence from the jury.

2

## II.     The Athletics Fundraising Witnesses Will Provide Crucial Exculpatory Evidence

The Athletics Fundraising Witnesses will provide testimony that the jury will not hear

from any other witnesses based on their extensive experience with the USC Athletics

department:

- Mr. Orr is the former Senior Associate Athletics Director at USC.  He led the Trojan Athletic Fund—USC's athletics department's fundraising arm—from approximately 2010 to 2020.  Overall, Mr. Orr worked for the USC athletics department for approximately 35 years.

- Mr. Lopes is the former Chief Operating Officer and Chief Financial Officer of the USC athletics department, a position he held from approximately 2012 to 2020.  Overall, Mr. Lopes also worked for the USC athletics department for approximately 35 years.

- Mr. Jacobson is a former Associate Athletics Director at USC and worked at the Trojan Athletic Fund.

The Athletics Fundraising Witnesses were intricately involved in USC Athletics'

fundraising initiatives throughout their years at USC, and can speak to the interplay between

admissions and fundraising for athletics.  The government's theory in this case is that "nobody at

USC" knew about receiving donations for preferential admissions treatment through athletics.

But, as the Athletics Fundraising Witnesses can testify, that is not so.  In fact, the most senior

people in the USC Athletics department knew about and approved of an institutional practice of

admitting students based on things other than academic or athletic merit.[1]  This practice was

widespread, went on over time, and involved many students at USC.  The Athletics Fundraising

Witnesses' testimony to this effect will show that receiving money for preferential admissions

---

[1]   ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████

treatment was common practice at USC.  Moreover, this testimony will corroborate Defendants'
statements that they had a good-faith basis for believing Rick Singer when he told them that the
practice was legitimate, and that they believed this was how things worked at USC.[2]  The
Athletics Fundraising Witnesses' testimony will also speak to whether the parents' payments to
USC can actually qualify as bribes (there is, of course, no such thing as a bribe that is approved
by the institution receiving it in the honest services context).  The government's attempt to
prevent the jury from hearing this type of exculpatory evidence violates the Defendants'
constitutional rights.

The Court need not take defense counsel's word on the importance of this evidence.
Chief Magistrate Judge Kelley has already spoken on this issue.  Shortly after the government
revealed that it was withholding key *Brady* material in which Singer confessed that he told the
Defendants that they were making donations to USC, rather than bribes, Judge Kelley held a
hearing to discuss the production of additional exculpatory evidence the government had been
withholding.  In that hearing, Judge Kelley spoke directly to the issues that are raised by this
Motion.  She said:

> If [Heinel's] taking money for an account over which she has control, which, I
> know the government says that's a bribe, **you still have to prove that the school
> was not in on that**.  And I know that the government – I've also reviewed the 302s
> with USC, and I know that the higher-ups are saying, "We never did that," and the
> lower-downs are saying, "We might have."  **So I think it's – and I'll just tell you
> from other material I've seen ex parte in the case, it is a viable assertion that
> USC had a practice of its admissions, of its athletics department admitting kids
> in exchange for a donation … as athletic walk-ons. . . .**  [The government is]
> going to say, Oh, it's a bribe legally if she has money going into accounts she
> controlled.  **That's going to be something for the jury to decide. It's not a de
> facto bribe.  The school has to be ignorant of that, and one might well ask, how
> could the school have been ignorant of that?** . . . I just think the government is
> kind of stuck on this theory that, if the money is going into an account for the school

---
[2]

in exchange for Heinel advocating for a student, then the defendants are guilty. **Number one, you do have to show that they [parents] knew that was happening; and, number two, you have to show the school wasn't okay with that.**

Dkt. 906 (Feb. 28, 2020 hearing) at 14:7-16:4 (emphasis added).  To this, the Assistant United States Attorney responded, "Yeah, yes Your Honor.  **And we intend to prove that.**" *Id*. at 16:5-6 (emphasis added).

Given the government's refusal to grant immunity to the Athletics Fundraising Witnesses, the government appears to want to present its one-sided evidence that the "school wasn't okay" with granting preferential admissions treatment for donations while at the same time blocking the defendants' evidence that, in fact, the school *was* okay with this arrangement. This is distortion of the evidence plain and simple.  As part of this strategy, the government plans to call USC Dean of Admission Timothy Brunold.  Dean Brunold filed a sworn affidavit earlier in this case which Judge Kelley characterized as "the unmistakable import of the statement is that donations are not important to the decision whether to admit students."  Dkt. 913 at 17 (referencing Dkt. 532-3 at 2).   At a hearing, Judge Kelley stated: "I don't for a second believe Mr. Brunold's affidavit that he submitted here, and I think it's belied by many of the documents that we've received…I just think that's not credible." Dkt. 673 (Nov. 26, 2019 Hr'g Tr.) at 21:15-22:2.  Judge Kelley later issued a written opinion in which she called Dean Brunold's affidavit "misleading."  Dkt. 913 at 18.  Dean Brunold's testimony cannot go unrebutted, but by denying Defendants the opportunity to call the Athletics Fundraising Witnesses, the government is guaranteeing that Dean Brunold gets the final word.

The documents produced in this case speak to what the Athletics Fundraising Witnesses will testify to that the government does not want the jury to hear.  For instance:

- Mr. Lopes told the FBI, "[Regarding walk-on athletes], [m]any factors are considered, including financial support, but at the end of the day, the student athlete is expected to benefit the program …. With regard to an exchange of money in order to accept a walk-on, it depended on the walk-on.  A lot of people want to help kids find a college and get them into school.  Having someone pay to help a student get into college isn't wrong.  If someone was a scholarship student, then it was different.  If money went to the coach, it would be a problem because a coach shouldn't take money." SINGER-VOL016-036044.

- In a January 2016 email, Donna Heinel told Mr. Orr that, with respect to a daughter of a potential donor, "I am taking her to subco as a ▇▇▇▇ walk on but she is not good enough to make the team."  Mr. Orr replies "Thanks." USAO-VB-01198905.

- In a June 2013 email, Mr. Orr emailed Ms. Heinel about admitting the daughter of another donor.  He wrote, "Potential donor for us and friend should I push it?  She doesn't have to be on team but can we help with admissions knowing she could be cut."  USAO-VB-01304438.

- In a June 2017 document titled "Title IX analysis," which analyzes the roster size of each sport, a note next to one sport states "Significant donor's son on roster. Practice only. Unique scenario for this year."  USAO-VB-01496074.  A note next to another sport states, "Two significant donor's sons on roster.  Practice only. Unique scenario for this year." *Id.*

Without the Athletics Fundraising Witnesses, the jury will be deprived of any testimony regarding the practices that are discussed in these emails and will hear only the government's one-sided testimony that USC was not "okay" with trading admissions for donations.[3]

### III.    The government has no good faith reason to refuse to immunize the witnesses

In cases where motions for defense witness immunity have been denied, the government provided a legitimate basis for its contention that witness immunity could interfere with an ongoing investigation. *See Curtis*, 124 F.3d at 9 (immunity could interfere with ongoing grand

---

[3]    As Judge Kelley stated, "[P]art of the problem we're facing here is that I think you have a very basic fact that you [the Defendants] need to get across to a jury to support your defense … and USC has gone on record saying that's not true.  So you're digging assiduously for documents showing that donations affected a person's chance of getting in, and USC is denying that's true." Dkt. 673 at 21:18-24. The Defendants now believe they have the witnesses to rebut the government's (and USC's) evidence, but are being blocked from presenting such evidence to the jury.

jury investigation which might result in prosecution of proposed defense witness); *United States v. De La Cruz*, 993 F.2d 1307, 1312-14 (1st Cir. 1993) (upholding district court's rejection of motion to immunize convicted but unsentenced co-conspirator); *Anguilo*, 897 F.2d at 1193 (government's desire not to hinder possible future prosecution of the witness was "motivated by something other than a desire to keep [the witness's] testimony from the jury"); *United States v. Drape*, 668 F.2d 22, 26 (1st Cir. 1982) (immunity denied where witness was under indictment on charges related to defendant's and government argued immunity would jeopardize its case against the witness).

In this case, **the government has declined to provide any reason why it is refusing to grant these witnesses immunity.** This is because there is no valid reason. The government's "Varsity Blues" investigation has been underway for approximately three years. The government has collected millions of pages of documents, reviewed hundreds of wiretapped conversations, and interviewed countless witnesses. Apparently satisfied with its investigation, the government indicted dozens of individuals, including Defendants, over two years ago in March 2019. Several individuals have pled guilty, and many remain awaiting trial in multiple cases in this district. At this point, after three years of investigating and preparing for trial, it is almost impossible to believe (nor has the government claimed) that the government is still continuing its investigation into this matter.[4]

Moreover, over the course of the two-year period since Defendants were indicted, the government has never made any suggestion that the Athletics Fundraising Witnesses were targets, or even subjects, of its investigation. In fact, on May 30, 2019, AUSA Rosen sent a letter to all counsel listing the "names of known unindicted co-conspirators as to the conspiracies

---

[4]     The government is of course aware that any use of a grand jury to prepare for trial is highly improper. *See In re Grand Jury Proc.*, 814 F.2d 61, 70 (1st Cir. 1987).

charged in the indictment**."  The list contained the names of over 75 individuals, but did not include the Athletics Fundraising Witnesses**.  If the government were interested in investigating the Athletics Fundraising Witnesses, it would have done so by now.  It has not – and will not – because if the government were to indict the Athletics Fundraising Witnesses, or name them as unindicted co-conspirators, it would risk destroying its own theory of the fraud. Instead, the government is attempting to distort the evidence by hiding from the jury the fact that these and other USC officials were aware of and in agreement with the practices at issue in this case.

      The fact that the government is attempting to distort the evidence is further demonstrated by the government's witness list, which includes a number of USC personnel from the admissions (e.g., Dean Brunold) and advancement departments but does not include a single witness who is or was employed by the Trojan Athletic Fund, or any administrator from the USC athletics department. The glaring omission—in a **case about athletic fundraising**—is not an accident.  If those individuals were to testify, the jury would hear about USC's practices of weighing donation potential on the scale for admissions.  The jury would hear how the athletics department not only approved, but encouraged, applicants to go "through athletics" during the admissions process if their family had the capacity to give donations.  And the jury would hear how many applicants were admitted as athletic "walk-ons" even though they were never expected to play a sport.  This testimony would directly contradict the government's theory that Donna Heinel was a rogue actor who defrauded her superiors by taking donations for USC. Thus, in order to protect its narrative, the government is trying to improperly prevent anyone from taking the stand who might testify to the contrary.

As further evidence of the government's lack of any legitimate basis to grant the Athletics Fundraising Witnesses immunity, the Court should consider what possible crime the Athletics Fundraising Witnesses could even be charged with. Certainly a fundraiser's job is to raise money, and even if the exact manner in which the fundraisers were raising funds was not authorized by official policy (although it may very well have been), that cannot be a federal criminal offense. The prosecutors' statements to the contrary are without any legal basis, although they appear to have had the effect of causing these witnesses to claim immunity. The undersigned have not located any case—anywhere—where the "bribe" in an honest services prosecution was a payment to the entity allegedly being defrauded of its employee's honest services. There has simply never been such a case. The undersigned respectfully refer the Court to Judge Woodlock's comments on this subject at the sentencing of Defendant Bizzack:

> THE COURT: That's not a bribe, is it? It's received by USC. Then we've got a faithless employee. That's a different issue from bribery, right?
>
> [AUSA] KEARNEY: No, Your Honor, because in light of Skilling, there has to be a bribe or a kickback.
>
> THE COURT: Yes, there does, I agree. And this is a case in search of a bribe or a kickback . . . . So now we're back to this question of what was the bribe that [Heinel] received? Because it has to be to her, not some account that she controlled, unless you say it was reasonably foreseeable to [Defendant] that she was going to toy with that account.

See United States v. Bizzack, Case No. 19-cr-10222-DPW, Sentencing Tr. at 15-16 (D. Mass.). There is no suggestion that the Athletics Fundraising Witnesses were using any of the money they raised for any non-USC purpose. It was their job to raise more and more funds for USC. And even if raising more and more funds for USC helped their careers, that does not turn them into criminals. See United States v. Thompson, 484 F.3d 877, 884 (7th Cir. 2007) (Easterbrook, J.) ("The United States has not cited, and we have not found, any appellate decision holding that

an increase in official salary, or a psychic benefit such as basking in a superior's approbation

(and thinking one's job more secure), is the sort of 'private gain' that makes an act criminal

under § 1341 and § 1346. . . . . We now hold that neither an increase in salary for doing what

one's superiors deem a good job, nor an addition to one's peace of mind, is a 'private benefit' for

the purpose of § 1346.").

## CONCLUSION

The government has no good-faith basis to deny a grant of immunity.  The government

simply wants to control the narrative, distort the evidence, and shield the jury from hearing

evidence that Judge Kelley has already found is exculpatory and contradicts the government's

theory of the case.  In order to preserve their right to a fair trial, Defendants respectfully request

that this Court exercise its authority to order the government to make a grant of statutory

immunity to Ron Orr, Steve Lopes, and Scott Jacobson under 18 U.S.C. § 6003(b), or else

dismiss the case.


Dated: July 27, 2021                          Respectfully submitted,

                                              */s/ Brian T. Kelly*
                                              Brian T. Kelly (BBO # 549566)
                                              Joshua C. Sharp (BBO # 681439)
                                              Lauren M. Maynard (BBO # 698742)
                                              NIXON PEABODY LLP
                                              53 State Street
                                              Boston, MA 02109
                                              (617) 345-1000
                                              bkelly@nixonpeabody.com
                                              jsharp@nixonpeabody.com
                                              lmaynard@nixonpeabody.com

                                              Robert Sheketoff (BBO # 457340)
                                              One McKinley Square
                                              Boston, MA 02109
                                              617-367-3449

*Counsel for Gamal Abdelaziz*

/s/ Cory S. Flashner
R. Robert Popeo (BBO # 403360)
Mark E. Robinson (BBO # 423080)
Eóin P. Beirne (BBO # 660885)
Cory S. Flashner (BBO # 629205)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 348-1605
rpopeo@mintz.com
mrobinson@mintz.com
ebeirne@mintz.com
csflashner@mintz.com

*Counsel for Elisabeth Kimmel*

/s/ Michael K. Loucks
Michael K. Loucks (BBO # 305520)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
500 Boylston Street
Boston, MA 02116
(617) 573-4800
michael.loucks@skadden.com

Jack P. DiCanio (*pro hac vice*)
Allen J. Ruby (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue
Palo Alto, CA 94301
(650) 470-4500
jack.dicanio@skadden.com
allen.ruby@skadden.com

*Counsel for Marci Palatella*

/s/ Michael Kendall
Michael Kendall (BBO # 544866)
Lauren M. Papenhausen (BBO # 655527)
WHITE & CASE LLP
75 State Street

11

Boston, MA 02109-1814
(617) 979-9300
michael.kendall@whitecase.com
lauren.papenhausen@whitecase.com

Andrew E. Tomback (pro hac vice)
MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY 10016
(212) 448-1100
atomback@mclaughlinstern.com

*Counsel for John Wilson*

## LOCAL RULE 7.1(A)(2) CERTIFICATION

I hereby certify that counsel for the defendants conferred with counsel for the government in an attempt to resolve or narrow the issues raised by this motion.  The government declined to extend the immunity sought in the motion.

*/s/ Joshua C. Sharp*
Joshua C. Sharp

## CERTIFICATE OF SERVICE

I hereby certify that a REDACTED copy of the foregoing was filed electronically on July 27, 2021, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.  An UNREDACTED copy of this document was served on the government by email.

*/s/ Joshua C. Sharp*
Joshua C. Sharp

12