UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GREGORY COLBURN et al.,<br><br>Defendants | No. 1:19-CR-10080-NMG |

## MOTION TO PRECLUDE ACCESS TO TRIAL VIA ZOOM

Defendants Gamal Abdelaziz and John Wilson respectfully request that this Court reconsider its decision to livestream the upcoming trial by Zoom. The standard in this District is for the public to be granted access to trials by seating in the gallery, or where that is not possible, to simulcast court proceedings to overflow rooms. Defendants respectfully state that there is no reason to depart from that established procedure in this case and that an unfettered livestream broadcast would turn the trial into a media frenzy, and would consequently interfere with Defendants' Sixth Amendment right to a fair trial. Defendants believe that the two overflow rooms would provide adequate public access. Additional access via Zoom is unnecessary and, in fact, will be harmful to the integrity of the judicial process.

The Supreme Court has recognized that "even when a right of access attaches, it is not absolute." *Press-Enter. Co. v. Superior Ct. of California for Riverside Cty.*, 478 U.S. 1, 9-10 (1986). "While open criminal proceedings give assurances of fairness to both the public and the accused, there are some limited circumstances in which the right of the accused to a fair trial might be undermined by publicity." *Id.* In an earlier case, the Court held that one of these limited circumstances existed when a trial was broadcast on television. *See Estes v. State of Tex.*,

381 U.S. 532 (1965) (holding that defendant was deprived of due process by the televising of his heavily publicized criminal trial). Technology has come a long way since the Court's decision in *Estes*, but the concerns hold true. Allowing public access to the trial proceedings via Zoom is the modern equivalent of broadcasting the trial on television. The publicity resulting from such a livestream would undermine the integrity of the judicial process. *See Estes*, 381 U.S. at 561 (Warren, J. concurring) ("[T]he courtroom . . . is more than a location with seats for a judge, jury, witnesses, defendant, prosecutor, defense counsel and public observers; the setting that the courtroom provides is itself an important element in the constitutional conception of trial, contributing a dignity essential to 'the integrity of the trial' process.").

An unfettered broadcast goes well beyond the access to which the public is entitled. *See Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16, 23 (2d Cir. 1984) ("There is a long leap…between a public right under the First Amendment to attend trials and a public right under the First Amendment to see a given trial televised. It is a leap that is not supported by history."). The risks associated with such a broadcast are far too great. Specifically, Defendants fear that an open broadcast would impede their rights to a fair trial for the following reasons:

***First***, a live broadcast impacts jurors. The jurors will be exposed to an onslaught of media coverage greater than that which would normally surround a trial, making the media's influence more difficult to avoid. While there is always some risk that jurors will receive outside influence, that risk is amplified when trial coverage is widely available. "To increase the possibility of influence and the danger of a 'popular verdict' by subjecting the jurors to the view of a mass audience whose approach to the case has been conditioned by pretrial publicity can only make a bad situation worse. The entire thrust of rules of evidence and the other protections attendant upon the modern trial is to keep extraneous influences out of the courtroom." *Estes*,

381 U.S. at 592 (Harlan, J. concurring). In the age of social media, it is more important than ever that the Court protect the integrity of the process by doing everything it can to limit extraneous influence.

*Second*, a live broadcast would make it more difficult for the Court to enforce witness sequestration. If Zoom access is widely available, a witness could easily gain access using information belonging to a friend or family member. By contrast, if public access is available only in physical courtrooms, the Court can easily ensure that no witness is breaching a sequestration order.

*Third*, a live broadcast may chill witnesses' willingness to testify. Moreover, even those witnesses who do testify will likely be influenced by the knowledge that they have a nationwide live audience. *See Estes*, 381 U.S. at 569-70 (stating that studies show that "awareness that a trial is being televised to a vast, but unseen audience, is bound to increase nervousness and tension, cause an increased concern about appearances, and bring to the surface latent opportunism that the traditional dignity of the courtroom would discourage") (Warren, J. concurring). As Justice Harlan recognized in his concurrence in *Estes*:

> In the context of a trial of intense public interest, there is certainly a strong possibility that the timid or reluctant witness, for whom a court appearance even at its traditional best is a harrowing affair, will become more timid or reluctant when he finds that he will also be appearing before a "hidden audience" of unknown but large dimensions. There is certainly a strong possibility that the "cocky" witness having a thirst for the limelight will become more "cocky" under the influence of television. And who can say that the juror who is gratified by having been chosen for a front-line case, an ambitious prosecutor, a publicity-minded defense counsel, and even a conscientious judge will not stray, albeit unconsciously, from doing what "comes naturally" into pluming themselves for a satisfactory television "performance"?

381 U.S. at 591.

*Fourth*, access via Zoom will make it impossible for the Court to enforce the rules against photographing or videotaping the proceedings.  In this high-profile case, a large number of public viewers—potentially thousands—can be expected to log on for viewing on any given day.  It is not unreasonable to think that some member of the public might decide to capture the proceedings on their phone, to broadcast even more widely.  The Court would have no way to monitor and enforce these rules against an unseen audience.

For all of these reasons, Defendants respectfully request that the Court permit public access to the trial only in the physical courtroom and overflow rooms and decline access via Zoom in order to ensure that the trial is "conducted with dignity and integrity so as to shield the trial process itself from these irrelevant external factors, rather than to aggravate them." *Estes*, 381 U.S. at 562 (Warren, J. concurring).

| | |
|---|---|
| Dated: August 30, 2021 | Respectfully submitted,<br><br>GAMAL ABDELAZIZ<br><br>By his attorneys,<br><br>*/s/ Brian T. Kelly*<br>Brian T. Kelly (BBO # 549566)<br>Joshua C. Sharp (BBO # 681439)<br>Lauren M. Maynard (BBO # 698742)<br>NIXON PEABODY LLP<br>53 State Street<br>Boston, MA 02109<br>(617) 345-1000<br>bkelly@nixonpeabody.com<br>jsharp@nixonpeabody.com<br>lmaynard@nixonpeabody.com<br><br>Robert Sheketoff (BBO # 457340)<br>One McKinley Square<br>Boston, MA 02109<br>617-367-3449 |

JOHN WILSON

By his attorneys:

*/s/ Michael Kendall*
Michael Kendall (BBO # 544866)
Lauren M. Papenhausen (BBO # 655527)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
(617) 979-9300
michael.kendall@whitecase.com
lauren.papenhausen@whitecase.com

Andrew E. Tomback (pro hac vice)
MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY 10016
(212) 448-1100
atomback@mclaughlinstern.com

**LOCAL RULE 7.1(A)(2) CERTIFICATION**

I hereby certify that counsel for the defendants conferred with counsel for the government in an attempt to resolve or narrow the issues raised by this motion. The government takes no position on this motion.

*/s/ Brian T. Kelly*
Brian T. Kelly

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically on August 30, 2021, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

*/s/ Brian T. Kelly*
Brian T. Kelly