UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GREGORY COLBURN, et al.,<br><br>Defendants. | Cr. No. 19-10080-NMG |

**DEFENDANT GAMAL ABDELAZIZ'S MOTION TO INTRODUCE EXHIBITS**

Defendant Gamal Abdelaziz respectfully moves this Court for admission of Exhibits 1254, 1255, 1540, and 1541 (attached hereto, and marked by the Court as Exhibits for Identification C, D, E, and F). These exhibits are absolutely critical to Mr. Abdelaziz's defense. They are not hearsay and in any case are admissible under the rule of completeness.

**BACKGROUND**

On direct examination of Mikaela Sanford, the government entered in evidence Exhibit 458, an email exchange between Mr. Abdelaziz and Ms. Sanford. The email chain states in relevant part as follows.

Ms. Sanford writes:

> Thank you!
> I have to confirm a few things with Rick before I can submit. I will confirm when USC is in.

Mr Abdelaziz replies to Ms. Sanford:

> Thank you Mikaela, I read Sabrina's essays. I noticed some minor grammar and spelling mistakes but overall they're both good. I will leave it to you and Andrew to correct. Please keep me in the loop until we submit.

At that same time, Ms. Sanford and Mr. Singer were using a side email chain to privately communicate about a profile for Sabrina that contained false information that Ms. Sanford would

insert into Sabrina's Common Application.  Specifically, at 4:17 PM PST Ms. Sanford sent a blank email to Mr. Singer with the subject: "**Please send Profile for Sabrina Aziz**" (Exhibit 1540). At 5:43 PM PST, Mr. Singer responded "**Just sent**." (Exhibit 1541) Separately, at 5:40 PM, he forwarded to Ms. Sanford a profile for Sabrina that contained inaccurate information (Exhibit 1254).  ***There is no text in the email – it is just a forward of the fake athletic profile (which is already in evidence) and an underlying thread from Laura Janke to Rick Singer (which is also already in evidence.)***  At 5:43 PM PST, Ms. Sanford responded "**Thanks. Will update her app and submit**." (Exhibit 1255).

In short, the correspondence proves that Ms. Sanford sent an email on the side to Singer in which she asked for Sabrina's fake athletic profile so that she could covertly add activities listed on the fake profile to Sabrina's Common Application without Sabrina's or Gamal's knowledge.  The fact that Sanford circumvented Sabrina and Gamal is absolutely critical to Mr. Abdelaziz's defense.

## ARGUMENT

### 1. The Emails Are Not Hearsay

These four emails simply are not hearsay.  The emails themselves barely contain any assertions that would even make them capable of being hearsay:

- **Exhibit 1540 contains only the following six words: "Please send Profile for Sabrina Abdelaziz."**

- **Exhibit 1541 contains only two additional words: "Just sent."**

- **Exhibit 1254 contains no words that are not already in evidence – Singer simply forwards the fake profile (which is already in evidence) to Sanford.**

- **Exhibit 1255 contains only seven words: "Thanks.  Will update her app and submit."**

Mr. Abdelaziz seeks the introductions of these emails not for the truth of the matter asserted (indeed there are barely any statements capable of being true or false at all), but rather to show they were sent. Their existence is relevant to the question of if Mr. Abdelaziz saw the false profile in question and thus it goes directly to the core of his defense: that he did not have the requisite mens rea to commit this crime. For the purposes of hearsay, a statement "means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801. "While 'assertion' is not defined in the rule, the term has the connotation of a positive declaration." *United States v. Lewis*, 902 F.2d 1176, 1179 (5th Cir. 1990). "The burden is on the party claiming the intention to assert existed, and ambiguous cases should be resolved in favor of admissibility." *United States v. Green*, 543 F. App'x 266, 270 (3d Cir. 2013).

Here, the issue is the *existence* of the emails, specifically: (1) Sanford asked Singer for a copy of the fake profile at precisely the time she told Gamal that she needed "to confirm" a few things with Singer, and just before she submitted Sabrina's Common Application; (2) Singer sent Sanford the fake profile; and (3) Sanford replied that she would update Sabrina's application based on the fake profile and then submit it. First, Sanford's inquiry to Singer asking him to send the profile is not an "assertion," and thus, not hearsay. *See Bolen v. Paragon Plastics, Inc.*, 754 F. Supp. 221, 225 (D. Mass. 1990) ("According to the very definition of hearsay, an inquiry is not an assertion, and therefore does not constitute hearsay."). Second, the act of Singer sending the profile is not an "assertion." It is an action, not an assertion. Finally, to the extent the six words "Will update her app and submit" are even capable of being a hearsay assertion, they easily fit into the exception for "a statement of the declarant's then-existing state of mind (such as . . . intent or plan)." Fed. R. Evid. 803(3); *see also United States v. Houlihan*, 871 F.

3

Supp. 1495, 1500 (D. Mass. 1994) ("The language of Rule 803(3) clearly says that statements of intent are admissible.").

2. **The emails also come in to impeach Ms. Sanford**.

Regardless of whether the emails are hearsay (and they are not), they can be admitted to impeach Ms. Sanford. Ms. Sanford stated that she only knew of one false athletic profile, which was unrelated to these defendants. Trial Day 8 (Sept. 20, 2021) Tr. at 18:4-9. She repeatedly sought to minimize her role in the RICO conspiracy and stated that but-for her taking online classes with some students she does not think she would have committed a crime. *Id.* at 36:5-8; *id.* at 44:13-16. Further, Ms. Sanford stated that she had never asked "for a profile – or an athletic profile from Rick Singer." *Id.* at 89:13-14. The fact that Ms. Sanford requested the profile outside of the email chain on which Mr. Abdelaziz was copied directly cuts against her repeated attempts to minimize her knowledge of and involvement in the creation of fake profiles and directly refutes her statement that she "never asked for a profile . . . from Rick Singer." As such, even if the existence of these emails were hearsay, they are admissible to impeach Ms. Sanford.

3. **These emails go directly to Mr. Abdelaziz's knowledge of the false profile and they directly rebut the purpose for which the government introduced the side chain that was occurring at the same time, and thus, under Rule 106 "in fairness ought to be considered at the same time."**

"If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — *or any other writing or recorded statement* — that in fairness ought to be considered at the same time." Fed. R. Evid. 106 (emphasis added). The plain language of Rule 106 applies to other email correspondence that in fairness ought to be considered at the same time. "The rule is based on two considerations. **The first is the misleading impression created by taking matters out of context.** The second is the

4

inadequacy of repair work when delayed to a point later in the trial." Fed. R. Evid. 106 advisory committee's note (emphasis added). "[T]he rule of completeness allows for the admission of otherwise inadmissible statements only when such statements are explanatory or relevant to the admitted passages." *United States v. Altvater*, 954 F.3d 45, 49 (1st Cir. 2020) (internal citations and quotations omitted). Ms. Sanford's "side emails" with Mr. Singer at precisely the same time she was telling Mr. Abdelaziz she would submit the application goes directly to Mr. Abdelaziz's central theory of innocence: that he was unaware of false information being submitted to USC. These exhibits are critical to Mr. Abdelaziz's defense and must not be excluded from evidence. *See Chambers v. Mississippi,* 410 U.S. 284, 302 (1973) (when a hearsay statement bears persuasive assurances of trustworthiness and is critical to the defense, the exclusion of that statement may rise to the level of a due process violation).

## CONCLUSION

For the reasons set forth above, Mr. Abdelaziz respectfully requests that the Court admit Exhibits 1254, 1255, 1540, and 1541.

| | |
|---|---|
| Dated: September 21, 2021 | Respectfully submitted,<br><br>GAMAL ABDELAZIZ<br><br>By his attorneys,<br><br>/s/ Brian T. Kelly<br>Brian T. Kelly (BBO # 549566)<br>Joshua C. Sharp (BBO # 681439)<br>Lauren a. Maynard (BBO # 698742)<br>NIXON PEABODY LLP<br>53 State Street<br>Boston, MA 02109<br>(617) 345-1000<br>bkelly@nixonpeabody.com<br>jsharp@nixonpeabody.com<br>lmaynard@nixonpeabody.com<br><br>Robert Sheketoff (BBO # 457340) |

5

One McKinley Square
Boston, MA 02109
617-367-3449

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically on September 21, 2021, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

                                                          */s/ Joshua C. Sharp*
                                                          Joshua C. Sharp