UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.: 19-10080-NMG |
| | ) | |
| GAMAL ABDELAZIZ *et al.*, | ) | |
| | ) | |
| Defendants | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANTS' OFFER OF PROOF FOR
EVIDENCE EXCLUDED IN THE EXAMINATION OF REBECCA CHASSIN AND
OPPOSITION TO MOTION TO ADMIT EXTRINSIC EVIDENCE FOR
IMPEACHMENT OF PAT HADEN, ALEX GARFIO, AND TIMOTHY BRUNOLD
[Dkts. 2283, 2293]**

At the final pre-trial conference more than a month ago, the Court made clear that this case

would not devolve into a series of mini-trials about students and admissions policies that have

nothing to do with the charged conspiracy or the two defendants on trial:

> As a preliminary matter, counsel should understand that this trial is not going to be
> about the general admissions policy of [USC] or the method it uses to admit
> students.  USC is not on trial here, and I will not have this case devolve into multiple
> side trials.

Dkt. 2108 at 6.  The Court further made clear what the defendants would need to establish in order

for such evidence to be admitted:

> Unless there's evidence that a defendant was misinformed with respect to the
> admission policy of the subject university and/or ***knew*** that USC admitted a specific
> unqualified student whose parent made a large donation to the school ***before*** that
> defendant entered into the alleged conspiracy, evidence of what other unrelated
> students and parents did has ***no bearing*** on the defendants' state of mind[.]

*Id.* (emphasis added).  The Court reiterated, specifically as to other applicants admitted through

Subco, or VIP or other special interest routes, that such evidence was not admissible unless "it was

known to the proffering defendant and somehow impacted his or her state of mind."  *Id.* at 20.  As

the evidence has come in, the Court has repeatedly affirmed its prior rulings that the relevant

evidence in this case should be limited to these defendants, their intent, and evidence regarding

the charged conspiracy.  For example, the Court has held that "testimony concerning the general fundraising practices of USC is not relevant to whether admitting students through Subco with falsified athletic profiles deprived USC of the honest services of its employees," and that VIP or special interest admissions practices are irrelevant because defendants' children "were admitted through Subco as putative athletic recruits."  Dkt. 2265 at 5.

The defendants' latest "offer of proof" and motion to admit "extrinsic evidence" for impeachment mark their refusal to accept the Court's repeated rulings, and confirmation that they seek to turn this proceeding into a series of mini-trials about irrelevant USC applicants and a general attack on USC's admissions practices.  *See* Dkt. 2283, 2293.  Nearly three years into this case and approaching the end of trial, the defendants still cannot point to *any* evidence that they knew about VIP lists or other specific unqualified students admitted through the Subco before they entered into the charged conspiracy.  *See* Dkt. 2108 at 6.  Unable to proffer evidence that they knew about VIP lists or specific students admitted through the Subco other than their own children, the defendants instead seek to back-door the identical evidence as purported extrinsic impeachment evidence of a witness who has already testified, and witnesses who have yet to testify, in direct contravention of Fed. R. Evid. 613(b) and the "collateral matter" rule that the First Circuit has consistently applied.  Their attempt to introduce this irrelevant evidence as purported impeachment should be rejected.

## I.      The Defendants' Proffered Evidence is Irrelevant and Inadmissible

The defendants' proffered evidence – consisting of e-mails that they did not receive, about students they did not know, and admissions practices such as VIP lists that have nothing to do with their children – is irrelevant and inadmissible.  *See* Fed. R. Evid. 401, 403.  "While a defendant has a 'wide-ranging' right to present a defense, that right is not absolute and does not include the

right to present irrelevant evidence." *United States v. Gottesfeld*, 319 F. Supp. 3d 548, 553 (D. Mass. 2018) (Gorton, J.) (quoting *United States v. Maxwell*, 254 F.3d 21, 26 (1st Cir. 2001)). Evidence is relevant only "if it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence." Fed. R. Evid. 401. Thus, any relevant evidence at trial must relate to the elements of the crimes charged or applicable defenses. *See United States v. Smith*, 940 F.2d 710, 713 (1st Cir. 1998). The defendants are charged with conspiring to commit mail fraud, wire fraud, and honest services mail and wire fraud, and conspiring to commit federal programs bribery. 18 U.S.C. §§ 1346, 1349, 371.[1] Thus, there are essentially only two relevant elements: (i) whether the conspiracies alleged in the indictment existed between at least two people, with the underlying offenses as the objects of those conspiracies; and (ii) whether the defendants knowingly and intentionally joined those agreements. *See, e.g.*, *United States v. Wyatt*, 561 F.3d 49, 54 (1st Cir. 2009) (listing elements for Section 1349 conspiracy).

The evidence the defendants seek to introduce about other applicants and athletic recruits, and USC's decisions and internal communications about those other applicants, is not probative of any of the charges or of the defendants' knowledge and intent. The defendants seek to introduce evidence concerning "VIP" lists and "special interest" flags, but *none* of their children was admitted to USC as a VIP or special interest candidate. And there is no evidence that the defendants had knowledge of the internal communications, spreadsheets, or background information about other USC applicants that they propose to introduce, such that those exhibits could have any bearing on their state of mind. *See, e.g.*, *United States v. Brandon*, 17 F.3d 409,

---

[1] Defendant Wilson is also charged with several substantive counts of wire fraud and honest services wire fraud, federal programs bribery, and a tax offense.

445 (1st Cir. 1994) (rejecting defendants' attempt to introduce evidence of victim's internal practices irrelevant to the fraud charged); *United States v. June*, No. 10-CR-30021-MAP, 2012 WL 245243, at *2 (D. Mass. Jan. 25, 2012) (rejecting attempt to show victim's "general lending policies were so slipshod or so venal that [d]efendant's alleged lies about his income and assets were of no moment").

The defendants' proffered evidence should also be excluded under Rule 403.  *See* Fed. R. Evid. 403.  In a case that is going to last more than three weeks of full trial days and has involved extensive cross-examination, the defendants now want to embark on a parade of mini-trials about admissions practices and students that they never knew about, flouting the Court's prior orders. *See, e.g.*, *United States v. George*, 761 F.3d 42, 57 (1st Cir. 2014) ("[T]he judge could have ended up with a mini-trial about a side issue – [a third party's] innocence of charges not made – that might have confused the jury."); *see also United States v. Taylor*, 848 F.3d 476, 485 (1st Cir. 2017) (excluding defense's attempt to introduce government's letter identifying an unindicted co-conspirator, which "could lead to a mini-trial about a side issue – to wit, why [the co-conspirator] was unindicted – so the risk of confusing the issues substantially outweighed the Letter's probative value").

## II.    The Defendants' "Offer of Proof" to Impeach Chassin Fails

The defendants' "offer of proof" and request to introduce 26 exhibits and a summary chart summarizing those exhibits to impeach USC admissions officer Rebecca Chassin is meritless for several reasons.  *See* Dkt. 2283.

First, 25 of the 27 documents with which the defendants seek to impeach Chassin do not involve her – she is not copied on them, and she testified as to many that she never saw them.  *See* Ex. 1085, 1116, 1219, 1249, 1288, 1565, 3628, 7107, 7207, 7223, 7235, 7238, 7242, 7332, 7341,

7387, 7409, 7527, 7529, 7807, 7845, 8045, 9734, 9748; *see also, e.g.*, 9/21/2021 Trial Tr. at 144 ("I don't know about this document [Ex. 1085].  I don't know what it is.  I've never seen it.  I don't know who made it.").  She cannot be impeached with someone else's statement or a document that she has never seen.  *See* Fed. R. Evid. 613 ("Extrinsic evidence of a ***witness's*** prior inconsistent statement . . .") (emphasis added).

As to the two remaining exhibits, Exhibits 1297 and 7358 are (i) irrelevant, because they involve transfer students on a VIP list from 2018, well after both Johnny Wilson and Sabrina Abdelaziz were admitted through Subco, (ii) inadmissible hearsay, and (iii) improper impeachment on a collateral matter.  *See infra* Part II.

<u>Second</u>, none of the proffered exhibits is inconsistent with the core of Chassin's testimony: that the Subco evaluates the athletic profiles it receives from the athletic department and does not "offer admission in exchange for money."  9/20/2021 Trial Tr. at 100–01.  The fact that other applicants appearing on VIP lists get a "second look" from admissions officers for a variety of reasons, including potential philanthropy, has nothing to do with the Subco process.  It is also not inconsistent with Chassin's testimony that USC's admissions department does not engage in *quid pro quo* deals of admission for money.  9/21/2021 Trial Tr. at 123.  *See United States v. Rivera-Donate*, 682 F.3d 120, 127 (1st Cir. 2012) ("[T]he court must be persuaded that the statements are indeed inconsistent."); *United States v. Martin*, 694 F.2d 885, 888 (1st Cir. 1982) (same).

<u>Third</u>, Chassin has already testified, and she was subjected to extensive cross-examination and impeachment for nearly four hours.  The defendants cannot now seek to introduce extrinsic evidence to impeach her retroactively.  *See* Fed. R. Evid. 613(b) ("Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement[.]").

5

III.    **The Defendants May Not Flout the Court's Orders through Impeachment**

      The defendants' motion to admit extrinsic evidence for impeachment of Pat Haden, Alex Garfio, and Timothy Brunold should be denied under  Fed. R. Evid. 401, 403, 613(b), and 802. *See* Dkt. 2293.  In their motion, the defendants preemptively seek admission of more than 150 pages of "impeachment" material regarding special interest or VIP lists, and ten different Subco and/or VIP applicants who have nothing to do with the charged conspiracy, the defendants, their intent, or the defendants' children.

      This "impeachment" evidence is simply the defendants' latest back-door attempt to evade the Court's pre-trial ruling that this trial will not devolve into a series of mini-trials that have no bearing on the critical issue in this case: the defendants' state of mind.  Absent from the defendants' filings and hundreds of pages of exhibits is any evidence that either defendant knew about any of these students prior to the date they allegedly joined the Singer-led conspiracy.  This evidence is irrelevant, unduly prejudicial, a waste of the jury's time, and rife with hearsay, and is therefore inadmissible under Fed. R. Evid. 401, 403, 802.

      For example, the defendants seek to introduce nearly 100 pages of exhibits about a golf recruit and two tennis recruits – all of whom were admitted *after* Johnny Wilson, and none of whom the defendants suggest they knew about before they began working with Singer.  *See* Exs. I, J, K.  These "exhibits" include dozens of e-mail chains filled with hearsay statements by non-testifying witnesses, transcripts and test scores of students who have nothing to do with this case, and even copies of internet profiles from Forbes about those students' parents and their wealth. These are not exhibits for a federal criminal trial; they are invitations to a circus.

      Further, to the extent the defendants are trying to evade the Court's previous orders by offering this evidence about other students via extrinsic evidence to impeach, they are wrong as a

matter of black-letter law. *See* Fed. R. Evid. 613(b). It is more than telling that the defendants do not cite Rule 613(b) or the collateral matter rule even once in their brief. *See* Dkt. 2293 at 1–8.

"It is well established that a party may not present extrinsic evidence to impeach a witness by contradiction on *a collateral matter*." *United States v. Cruz-Rodriguez*, 541 F.3d 19, 30 (1st Cir. 2008) (emphasis added); *accord United States v. Beauchamp*, 986 F.2d 1, 3 (1st Cir. 1993). In affirming this Court's exclusion of extrinsic impeachment evidence on a collateral matter, the First Circuit noted that "[w]hether something is collateral is within the discretion of the trial judge." *United States v. Marino*, 277 F.3d 11, 24 (1st Cir. 2002). A matter is considered collateral if "the matter itself is not relevant in the litigation to establish a fact of consequence, *i.e.*, not relevant for a purpose other than mere contradiction of the in-court testimony of the witness." *Beauchamp*, 986 F.2d at 4; *see also United States v. DeCologero*, 530 F.3d 36, 60 (1st Cir. 2008) (explaining that the collateral matter rule is "a manifestation of the district court's general discretion to exclude" evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay or waste of time"). In other words, "a matter is collateral if it could not have been introduced into evidence for any purpose other than contradiction . . . the evidence must have an independent purpose and an independent ground for admission." *United States v. Mulinelli-Navas*, 111 F.3d 983, 988 (1st Cir. 1997).

For example, in *DeCologero*, the First Circuit explained that extrinsic evidence for impeachment is properly considered a collateral matter and thus excludable if it would "distract from the main issues of the case" and introduce a "mini-trial." 530 F.3d at 60. Further, in *Marino*, the First Circuit affirmed this Court's exclusion of extrinsic evidence on a collateral matter via impeachment because it was "not relevant to [the] defendant's guilt or innocence." 277 F.3d at 24; *accord United States v. Lipscomb*, 539 F.3d 32, 39 (1st Cir. 2008) (affirming exclusion of

extrinsic evidence for impeachment on collateral matter unrelated to defendant's intent).  And as the First Circuit held just a few months ago in *Maldonado-Pena*, "a party may not present extrinsic evidence for the sole purpose of impeaching a witness on a collateral matter," and extrinsic evidence about others' conduct that has no "bearing on the issue of [the defendant's] own culpability" is properly excluded.  4 F.4th 1, 36 (1st Cir. 2021); *accord United States v. Andujar*, 49 F.3d 16, 26 (1st Cir. 1995) (same, where extrinsic evidence "was irrelevant to the substance of the case").

Application of Rule 613(b) and the collateral matter rule is straight-forward here: the Court has already concluded – multiple times – that evidence about other students admitted through Subco unknown to the defendants and unrelated to the charged conspiracy, and evidence regarding VIP lists, is irrelevant and not admissible under Rules 401 and 403.  *See* Dkt. 2108 at 6 (excluding such evidence unless defendant "knew that USC admitted a specific unqualified student whose parent made a large donation to the school before that defendant entered into the alleged conspiracy [because] evidence of what other unrelated students and parents did has no bearing on the defendants' state of mind").  Accordingly, there is no "independent purpose and [] independent ground for admission."  *Mulinelli-Navas*, 111 F.3d at 988.  There can be no serious dispute that evidence about VIP lists or students who were admitted through Subco, absent the defendants' knowledge of those students, has no bearing on the defendants' intent, as this Court has already held.  *See* Dkt. 2265 at 5.  In short, if extrinsic evidence about what *other* applicants did or did not do, sports accolades that *other* applicants did or did not have, donations that *other* applicants' parents did or did not make – all unbeknownst to the defendants – is not collateral, it is difficult to discern what is.  The defendants' motion provides the Court with no justification for departing

8

from its prior repeated holdings, and granting their motion will ensure that the trial devolves into a series of extended irrelevant mini-trials.  *See DeCologero*, 530 F.3d at 60.

**<u>CONCLUSION</u>**

For the foregoing reasons, the defendants' offer of proof for impeachment of Chassin and motion to admit extrinsic evidence for impeachment of Haden, Garfio, and Brunold should be denied.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By: */s/ Ian J. Stearns*
KRISTEN A. KEARNEY
LESLIE A. WRIGHT
STEPHEN E. FRANK
IAN J. STEARNS
Assistant United States Attorneys

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: September 28, 2021                   */s/ Ian J. Stearns*
                                            IAN J. STEARNS