UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GAMAL ABDELAZIZ, et al.,<br><br>Defendants. | Cr. No. 19-10080-NMG |

### DEFENDANT GAMAL ABDELAZIZ'S REPLY IN SUPPORT OF MOTION FOR RELEASE PENDING APPEAL

Defendant Gamal Abdelaziz fully incorporates the arguments set forth in Defendant John Wilson's Reply in Support of the Motion for Release Pending Appeal. Wilson's arguments are equally applicable to Abdelaziz. Abdelaziz replies separately to emphasize the following five points.

***First***, it is undisputed that: (1) the standard for a "substantial question of law" is "a 'close' question or one that very well could be decided the other way." *United States v. Bayko*, 774 F.2d 516, 523 (1st Cir. 1985); (2) this session held that an offer of admission *was* property and Judge Talwani held that an offer of admission was *not* property. Given these two basic points, the government's refusal to concede that the "property" issue is a substantial question of law does not make any sense. **The "property" question "very well could be decided the other way" because it <u>was</u> decided the other way by Judge Talwani.** Of course this Court disagrees with Judge Talwani's decision, as many reasonable jurists disagree about a range of matters that come before them. The government is not asking the Court to disagree with Judge Talwani—the Court has already expressed its disagreement—but is instead asking this Court to hold that her decision was so frivolous that it should be disregarded entirely and not accorded any respect as a

1

rational decision of a fellow judge. Surely the prosecutors cannot believe this Court (or the First Circuit, if this Court denies relief) would render such an extraordinary decision.

The government supports its position that "differing judicial views … do[] not, without more, meet the *Bayko* standard," Opp. at 4, by misleading this Court with citations to opinions of Judge Burroughs and Judge Wolf. First, the government suggests that in *United States v. Gurry*, No. 16-10343, 2020 WL 1063001, Judge Burroughs denied bail pending appeal despite "acknowledging [a] 'circuit split regarding whether the [intracorporate conspiracy] doctrine applies to RICO conspiracies." Opp. at 4. But that is not true. The government lifted a quote from her opinion about **civil** RICO actions without informing this Court that Judge Burroughs also wrote on the very same page:

> Even those circuits that have adopted the intracorporate conspiracy doctrine have only allowed it in civil cases and do not apply it to the criminal context. **There is therefore no circuit split regarding the applicability of the doctrine to this case.**

Judge Burroughs **did not** hold, as the government suggests, that bail pending appeal could be denied where there is a circuit split on a key legal issue. The government cites Judge Wolf for the same proposition, describing his denial of bail pending appeal in the *DiMasi* case as "denying bail pending appeal where defendants argued that court instructed jury on term inconsistent with another court's precedent." Opp. at 4. While the defendants in that case *argued* that Judge Wolf's instructions were contrary to a Second Circuit decision, Judge Wolf explicitly *rejected* that argument, ruling:

> This case is, therefore, distinguishable from the recent Second Circuit decision in *Ferguson*, cited by defendants.

*United States v. DiMasi*, 817 F. Supp. 2d 9, 20 (D. Mass. 2011). Again, Judge Wolf **did not** deny bail pending appeal in the face of contrary authority on a key legal issue.

These citations are so misleading that the undersigned sent a letter to the prosecutors on April 26, 2022 asking them to "correct the record and not allow a misleading argument to be presented to the Court." *See* Exhibit A, Letter from B. Kelly to S. Frank. The government never responded. No correction has been made.

**_Second_**, the government is correct that "the mere absence of precedent directly on point does not render a question 'substantial.'" Opp. at 6. But that is neither here nor there. In *Skilling*, the Supreme Court held that "honest-services fraud does not encompass conduct more wide-ranging than the **paradigmatic** cases of bribes and kickbacks." *Skilling v. United States*, 561 U.S. 358, 411 (2010) (emphasis added). Outside of "Varsity Blues," there has never been a case—anywhere and ever—where a court considered a payment *to the entity* allegedly deprived of its honest services to be a bribe. The alleged "bribe" in this case is unprecedented, which of course is highly relevant to whether it is "paradigmatic" under *Skilling*. Again, this is just common sense. Do the prosecutors actually believe that this Court (or the First Circuit, if this Court denies relief) would hold that the question of "what is a bribe" in this case is not a "substantial question of law," or do they reflexively oppose all motions for bail pending appeal, regardless of the legal merits?

**_Third_**, the Court should take note of the prosecutors' brazen dismissal of Judge Woodlock's negative commentary on their bribery theory as merely "off the cuff." Opp. at 7. It is difficult to believe that Judge Woodlock, who has been on the bench for nearly forty years, would make "off the cuff" remarks on an important legal matter when sentencing a man to federal prison. Perhaps the prosecutors wish to deride the remarks of any judicial officer who disagrees with their novel legal theories as "off the cuff," but this Court need not partake in that

dubious exercise. The simple fact of the matter is that Judge Woodlock stated during the sentencing of Defendant Bizzack:

> [T]his is a case in search of a bribe or kickback . . . . So now we're back to this question of what was the bribe that she [Heinel] received? Because it has to be **to her, not some account that she controlled, unless it was reasonably foreseeable to [defendant] that she was going to toy with that account.**

Sentencing Tr. at 16, *United States v. Bizzack*, 19-cr-10222-DPW, ECF 34. He then had an extensive colloquy with the AUSA on this very issue. These were not "off the cuff" remarks, much as the prosecutors wish that they were.

It would certainly be news to Judge Woodlock that, as the prosecutors state in their Opposition, "every session of the Court to consider the issue has found that a payment to a university account may constitute a bribe." Opp at 8. At most, Judge Woodlock hypothesized—while "giving the government the benefit of the doubt on this"—that a payment to a university account might be a bribe *if it was reasonably foreseeable to the defendant that someone would "toy with" that account*. Sentencing Tr. at 16-18. But, of course, there was no such evidence in this case. On the contrary, the parties stipulated that all payments to the Galen Center Gift Account, the Women's Athletic Board, and the Water Polo Account were only used for a bona fide USC purpose. *See* 10/1/21 Tr. at 16:16-25, 97:4-12.

<u>Fourth</u>, relatedly, the government's discussion of Judge Easterbrook's holding in *United States v. Thompson*, 484 F.3d 877 (7th Cir. 2007) is wrong. The government writes that, "[In *Thompson*, the c]ourt considered whether an employee's regular compensation could constitute a bribe." Then, attempting to distinguish *Thompson,* the government notes:

> In this case, by contrast, **the bribe payments to university accounts provided benefits to the corrupt insiders that was [sic] outside of their regular compensation**.

4

Opp. at 8 (emphasis added). But what does the government mean—what benefits are the prosecutors talking about? There was **zero evidence** of any collateral benefits stemming from payments to USC accounts aside from Heinel's compensation. In fact, in his closing argument, the prosecutor referred to an increase in Heinel's salary as the only collateral benefit Heinel received from the donations to USC accounts:

> Look at how much of the money flowing into the Women's Athletic Board came over the period of the conspiracy from Rick Singer's clients. You heard testimony that Donna Heinel's salary went up by about $100,000 over this same period. And you saw that fundraising was an important part of her annual performance reviews . . . .

10/6/21 Tr. at 28:9-28:15.

Further, the prosecutors ignore that *Thompson* considered not only "whether an employee's regular compensation could constitute a bribe." Judge Easterbrook actually wrote:

> We now hold that neither **an increase in salary for doing what one's superiors deem a good job, nor an addition to one's peace of mind**, is a "private benefit" for the purpose of § 1346.

*Thompson*, 484 F.3d at 884 (emphasis added). Again, the prosecutors never presented any evidence that payments made to USC accounts benefited Heinel in any way aside from "an increase in [her] salary for doing what one's superiors deem a good job" or "an addition to [her] piece of mind."

Of course, this Court is not bound by Judge Easterbrook's decision and the undersigned understands that this Court respectfully disagrees with his analysis on the scope of the honest services and federal programs bribery statues. But that disagreement does not give the prosecutors license to misconstrue either *Thompson* or the facts of this case.

<u>**Fifth**</u>, the prosecutors make the strange argument that "the government is aware of no First Circuit case—and the defendants cite none—finding the *Bayko* 'close question' standard

5

was satisfied based on a multiple conspiracies argument," Opp. at 9, and separately note that the defendants "cite not one case—anywhere—finding a close question justifying bail pending appeal under this standard for such routine evidentiary rulings," *id*. at 15.[1] Set forth in the footnote are a sampling of First Circuit cases that **reversed convictions** based on either a multiple conspiracies argument or an evidentiary argument.[2]  **Obviously the standard for reversal is much higher than the *Bayko* standard for release pending appeal.**  The undersigned have not examined the underlying dockets in each of the cases to determine whether a bail pending appeal motion was even filed, much less granted or denied.  Nor is it necessary to do so.  If the conviction was reversed, the *Bayko* standard should have been satisfied.  Certainly the government can have no disagreement there.

|  |  |
|---|---|
| Dated: May 2, 2022 | Respectfully submitted, |
|  | GAMAL ABDELAZIZ |
|  | By his attorneys, |
|  | */s/ Brian T. Kelly* |
|  | Brian T. Kelly (BBO # 549566) |
|  | Joshua C. Sharp (BBO # 681439) |
|  | Lauren M. Maynard (BBO # 698742) |
|  | NIXON PEABODY LLP |
|  | 53 State Street |
|  | Boston, MA 02109 |
|  | (617) 345-1000 |
|  | bkelly@nixonpeabody.com |
|  | jsharp@nixonpeabody.com |
|  | lmaynard@nixonpeabody.com |

---

[1] The statement is also not true.  In their opening brief, defendants cited *United States v. DeSimone*, 424 F. Supp. 2d 344, 351–53 (D.R.I. 2006) (granting release based on potentially prejudicial exclusion of evidence).

[2] *United States v. Rosario-Perez*, 957 F.3d 277 (1st Cir. 2020); *United States v. Feliz*, 794 F.3d 123 (1st Cir. 2015); *United States v. Ocasio-Ruiz*, 779 F.3d 43 (1st Cir. 2015); *United States v. Delgado-Marrero*, 744 F.3d 167 (1st Cir. 2014); *United States v. Dellosantos*, 649 F.3d 109 (1st Cir. 2011); *United States v. Sanabria*, 645 F.3d 505 (1st Cir. 2011); *United States v. Casas*, 356 F.3d 104 (1st Cir. 2004), *order clarified sub nom. United States v. Cunningham*, 2004 WL 383279, 359 F.3d 627 (1st Cir. 2004); *United States v. Glenn*, 828 F.2d 855 (1st Cir. 1987).

Robert Sheketoff (BBO # 457340)
One McKinley Square
Boston, MA 02109
(617) 367-3449

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on May 2, 2022, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

*/s/ Joshua C. Sharp*
Joshua C. Sharp