UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| United States | ) | Criminal Action No 19-10080-NMG |
| v | ) | |
| Gamal Abdelaziz, | ) | |
| John Wilson, Defendants | ) | |

<u>SUPPLEMENT</u> TO AMICUS BRIEF IN SUPPORT OF UNITED STATES

I  Chose in Action

(1)   Kevin Sobel-Read et al, *The Critical Role of Choses in Action: A Call for Harmonization Across Common Law Jurisdictions*. Fordham Int'l L J, 45: 513 stated:

"These differences [among common law jurisdictions] rarely involve the definition of a chose in action. Rather, jurisdictional variation most frequently arises in regard to the transfer of choses in action, and, in particular, to whom they can be assigned and under what circumstances." *Id*, at 516.

"The sixteenth century [in Eng;and] was characterized by a tendency to regard any intangible right which was not clearly an incorporeal hereditament, and any non-assignable right, even if only temporarily non-assignable, as a chose in action. This eventually included the documents that were necessary evidence of such a right to action, such as bonds, documents of title, charters, and deeds. This inclusion led to the extension of the concept to include elements of the law of contract and property * * * " *Id*, at 518 (footnotes omitted)

"There is federal common law on the subject [chose in action], but only specifically regarding federal matters. By and large, state law is most relevant here." *Id*, at 523 (footnotes omitted)

https://ir.lawnet.fordham.edu/cgi/viewcontent.cgi?article=2838&context=ilj
(a) Compare *Sheldon* v *Sill* (1850) 49 US 441, 449

"The term 'chose in action' is one of comprehensive import. It includes the infinite variety of contracts, covenants, and *promises*, which confer on one party a right to recover a personal chattel or a sum of money from another, by action.  It is true, a deed or title for land does not come within this description. And it is true, also, that a mortgagee may avail himself of his legal title to recover in ejectment, in a court of law." (emphasis added)

The intangible mortgage loan is a chose in action, manifested in "document" (Sobel-Read's second quotation above) called mortgage note (or deed of trust in some states such as California).

It is assumed both Sibel-Read's second quotation and Sheldon referring to the same thing (title deed). Perhaps the *Sheldon* court did not deem deed a chose in action because it was not a contract; moreover deed is document for chose in possession: realty.

(b)     A lengthy discussion on chose in action is found in WS Holdsworth, *The History of the Treatment of 'Choses' in Action by the Common Law*. Harv L Rev (1920) 33: 997. https://www.jstor.org/stable/pdf/1327628.pdf

(c)     In the instant case, though federal common law (on chose of action or property) may be in play, Lu does not attempt to engage in choice-of-law analysis, for he sees no difference with California state law (in these two subjects).

(2)     federal common law on chose in action: *Sprint Communications Co v APCC Services, Inc* (2008) 554 US 269, 275-276; *Burnet v Wells* (1933) 289 US 670, 679-680 ("A policy of life insurance is a contract susceptible of ownership like any other chose in action. * * * policy of life insurance is a contract * * * The contracts remain his [insured], or his at least in part"); *JA Wynne Co, Inc v RD Phillips Construction Co, Inc* (CA5 1981) 641 F.2d 205, 208; *Jenkins v United States* (1970) 428 F. 2d 538 ("inchoate title" as chose in action).

(3)
(a)     *United States v Granberry* (CA8 1990) 908 F.2d 278, 279-280 described "[t]en different types of money or property" bus company and State of Missouri were defrauded. The latter could not stand in view of *Cleveland v United States* (2000) 531 US 12. In the case at bar, the government could have charged Abdelaziz with defrauding the university, not just of admission slot but of discount to tuition, which is scholarship.

(b)     *Granberry*, at 280, further stated: "An employment contract is property. It is a chose in action. It represents a right in the employee to be paid agreed-upon wages for services performed, and a right in the employer to demand agreed-upon services for wages paid."

Substitute "student" for "employee," "school" for "employer," and school rather than employee as service provider, and, voilà, one has school-student relationship in a new perspective.

(4) Degree and admission slot and are both choses in action.

(a) Degree is intangible right, whereas diploma is "document." School possesses unissued degree (something akin to "inchoate title") in which student has anticipatory interest. Parenthetically, the reasoning in *United States* v *Frost* (CA6 1997) 125 F.3d 346, 367 ("Awarding degrees to inept students, or to students who have not earned them, will decrease the value of degrees in general. More specifically, it will hurt the reputation of the school and thereby impair its ability to attract other students willing to pay tuition, as well as its ability to raise money. The University of Tennessee therefore has a property right in its unissued degrees") for the proposition that unissued degree is school's property is rejected in *United States* v *Virginia* (1996) 518 US 515, 542 ("The notion that admission of women would downgrade VMI's stature, destroy the adversative system and, with it, even the school, is a judgment hardly proved").

School retains restrictions over *post*-issued degree. That is how colleges rescinded comedian Bill Cosby's honorary degrees (wrongfully or not).

(b) Admission slot is intangible right (of school alone, not shared with potential student), documented in notification of acceptance.

(c) Cf *Trustees of Dartmouth College* v *Woodward* (1819) 4 Wheat (17 US) 518, 332 ("There are many rights, franchises and authorities, which are valuable in contemplation of law, where no beneficial interest can accrue to the possessor. * * * Yet a grant of them has never been supposed the less a contract on that account. * * * [They] are deemed valuable in law").

(d) Chose in action, by definition, has recourse in civil action. School can afford to sit back and wait for student to commence civil action, but in theory school can seek declaratory judgment (student pays tuition at the beginning of semester, so school need not sue student for nonpayment). And that is what students have done: *Harwood* v *Johns Hopkins University* (Md. Ct.Spec.App.2000) 130 Md.App. 476, 747 A.2d 205 (degree), *Winkler by Winkler* v *Marist Fathers of Detroit, Inc* (Mich. 2017) 500 Mich 327, 901 N.W.2d 566, on remand (Mich.App.2017) 321 Mich.App. 436, 909 N.W.2d 311 (admission). Neither case discussed property or chose in action, but Harwood discussed contract.

(5)
(a) A ticket to performance (document) has four facets in law: chose in action, contract, license and good. Ticket vendor retains restrictions over post-issued ticket. See *Regina* v *Hunter* [2021] EWCA Crim 1785 at ¶¶ 17 (issue 6), 173-174 (ruling on issue 6). (Incidentally, a check form is a form to request payment from buyer via a check.)

https://caselaw.nationalarchives.gov.uk/ewca/crim/2021/1785
So does admission slot or degree, Lu submits.

(b) Let's double back on *Cleveland*, 531 US 12, where government license, as Lu tells it, has all facets listed in preceding paragraph, except contract. What is the difference, then, between government license (which *Cleveland* held was "purely regulatory," *id*, at 22) and license issued by civilians? This *Cleveland* reasoned in *id*, at 20 ("Significantly, Congress [in 18 USC § 1346] covered only the intangible right of honest services") and n 3, 22-23.

Certainly *Cleveland* took intangible rights into consideration, without uttering chose in action. Also *Cleveland, ibid*, did not lose sight of *Carpenter* v *United States* (1987) 484 US 19 (newspaper's intangible right to unpublished report or analysis), so property in mail or wire fraud

statutes need not be tangible. Accord *Kelly* v *United States* (2020) 590 US _, _ ("time and labor of Port Authority employees").

In that the criminal prosecution of Abdelaziz must look to California common law also (besides federal common law on chose in action or property), the reasoning in *id*, at 22 seems contrary to later California decision in Part II ¶ 2, *infra*. And Louisiana criminal statutes (related to submission of false information to obtain states license) broached in *Cleveland*, 531 US, at 23, is similar to other states' criminal statutes (see last citation in Part II ¶ 2, *infra*), which are state counterparts of mail or wire fraud.

So Lu is at loss as to the difference, if any, between government license and civilian one, except that the former is issued by a state, a sovereign. Lu concluded that for better or worse, in effect *Cleveland* carved out government license, and that is what one commentator implied: James Y Stern, *Property's Constitution* (2013) Cal L Rev, 101: 277, 280, n 2 (summarizing *Cleveland*, 531 US, at 26 as "licenses to operate video poker machines are not 'property' for purposes of 18 USC § 1341, federal mail fraud statute"). https://scholarship.law.wm.edu/facpubs/1527

## II California State Law

(1)

(a)     Lu's May 17, 2023 *Amicus Brief*, Part III ¶ 2 praised appellee's brief (by government). At the time. Government was unaware of *United States* v *Brown University* (E.D.Pa. 1992) 805 F.Supp. 288. Nonetheless, government has a point, if only it had known *People* v *Romanowski* (Cal.2017) 2 Cal.5th 903, 916 ("Indeed we are aware of no jurisdiction that bars courts from looking at evidence of illegal market value. We see no reason to establish that restriction in California"), 215 Cal.Rptr.3d 758, 391 P.3d 633.

(b) As for college degree, *Frost*, 125 F.3d, at 353 (students who received advanced degree through ghostwriting would secure government contract to enrich professors) provided framework to estimate value of degrees they cheated to obtain.

(2) Many defendants in Varsity Blues scandal claims it was a victimless crime, and university actually gained, rather lost, money. The point was repudiated by all courts that considered it: *Kwikset Corp* v *Superior Court* (Cal.2017) 51 Cal. 4th 310, 330 ("purchase would not have been made but for the misrepresentation"), 120 Cal.Rptr.3d 741, 246 P. 3d 877; *Hunter* [2021] EWCA Crim 1785 at ¶¶ 17 (issue 4(ii) ), 136-140 (ruling on issue 4(ii) ); *Commercial Transactions; false financial statements* (1994) 25 Pac L J 489, 490, n 6 (especially last citation). https://scholarlycommons.pacific.edu/cgi/viewcontent.cgi?article=1910&context=mlr

Amicus:    Friedrich Lu, pro se
Date:      May 26, 2023
Email address:chi2flu@gmail.com
Address:   % St Francis House, PO Box 499, Lafayette Station, Boston, MA 02112
**Certificate of service**: Counsel of all parties are registered users of CM/ECF.

SCREENED SWSU

(b)...college degrees. Frost, 125 F.3d, at 354 (students who received advanced degrees, but whose hiring would occur via a contract to which professors provided framework to estimate value of degrees they chose to obtain).

(3) Many defendants in Varsity Blues' conduct claims it was victimless crime, and that's fully actually gained, other than, a notice. The point was repudiated by all courts that considered in Kwikset Corp v Superior Court (Cal 2011), 51 Cal. 4th 310, 330 ("purchase would not have been made but for the misrepresentation"). 129 Cal.Rptr.3d 741, 246 P. 3d 877. Monje [2021] EWCA Crim 1785 at ¶ 12 [¶¶ 6-41] (ruling on issue 4[D]); Commercial Transactions, Jolley Statute of Forestaller (1954) 25 Pac L J 456, 456, n.6 (especially last citation). https://scholarlycommons.pacific.edu/cgi/viewcontent.cgi?article=1910&context=mlr

Actions: Friedrich L. revise
Date: May 16, 2023
Email address: h921u@gmail.com
Address: St Francis House, P.O. box 495, Lafayette Station, Boston, MA 02117
Classification of services: Counsel of all entities...are registered users of CM/ECF.

USMS SCREENED